NELSON *v.* GRAY.

4-3742

Opinion delivered January 14, 1935.

*Ben B. Williamson,* for appellant.
*Dene H. Coleman,* for appellee.

BAKER, J. The appellant and appellee were rival candidates for the democratic nomination for county and probate judge of Stone County in the run-off primary election held on the 28th day of August, 1934. The Democratic Central Committee of that county certified that the appellant had received 629 votes and the appellee 630 votes, and declared Gray the nominee of the party.

The plaintiff, appellant here, in due time filed contest, alleging that he had received the majority of the legal votes of the county in said primary, and that he was entitled to the certificate of nomination, and alleged also that there were five votes cast by absentee voters for the contestee, Gray, and that the said five votes were illegal. These were votes of E. V. Story and other members of the Story family. It was alleged they had been

absent from the State for more than a year and had been staying or residing at or near West Plains, Missouri. Several reasons were set up as tending to show the said votes were illegal. In addition thereto he complained that ten different persons in different townships, who had probably become of age since the last assessing time, but who did not attach to their ballots the affidavit showing the attainment of their majority since last assessing time, as required by § 3777 of Crawford & Moses' Digest, cast their votes for Gray, and further that B. G. West, his wife and son, voted for Gray, and that said votes were counted as legal votes, when in fact the West family had not been residents of the State for one year next preceding the election.

The total of all of these votes, together with others alleged to have been cast by persons under twenty-one years of age and voting for the contestee, according to the complaint, about which the contestant complained, was twenty-seven in number, which, if deducted from the vote received by Gray, would leave to the plaintiff, or contestant, a majority of twenty-six. The prayer was that the contestant be declared the democratic nominee for county and probate judge. This complaint was supported by a sufficient number of democratic electors. At least, the affidavit was not questioned.

Later Nelson, on the 4th day of September, filed an amendment to his complaint, naming other persons who voted for Gray, setting forth the township in which they voted, and alleged that said persons had no poll tax receipts, were not of age, or were otherwise disqualified as electors. These were in number about fourteen or fifteen.

The cause came on for trial on the 24th and 25th days of September. Motion was filed to strike the amendment to the original complaint. This motion was granted by the court.

The defendant, or contestee, Gray, filed his answer and cross-complaint. In his answer he denied the material allegations of the complaint and also pleaded that certain persons had voted for W. H. Nelson, the contestant, listing the parties, and challenging the legality

of forty-three of such votes alleged to have been cast for Nelson, and challenged about thirty-seven others, in another paragraph of his answer, which were alleged to have been cast for the plaintiff, appellant here. Later in the progress of the trial the contestant, Nelson, filed a second amendment to the complaint, wherein he set up that in certain townships there were thirty-four votes cast and counted for John H. Gray, contestee, by persons who were not qualified electors by law, but that the defendant, John H. Gray, had procured their poll tax receipts to be delivered to him by the collector, and to be used by him with the intent to influence the vote of parties named in this amendment to the complaint, and that none of said parties had at any time ever paid for their poll tax receipts; that all of said votes should be eliminated. The court refused to permit the filing of this second amendment for the reasons that it set up or alleged new matter and was not a mere elaboration or more specific pleading of the matters set forth in the original complaint, and on account of the new matter it was filed too late.

The appellant, or contestant, filed answer to the cross-complaint of the contestee, denying that illegal ballots were cast for him. Considerable testimony was heard relative to the several questions raised, and, in the view we take of this case, it can be of no advantage to the parties, or as a precedent, for us to set forth or discuss all or any material part of this testimony.

The court found that of the votes alleged to be illegal and challenged by plaintiff's complaint there were sixteen illegal, and that of these, six voted for the plaintiff, Nelson, and that ten voted for the defendant, Gray; that of the votes challenged by defendant's answer there were fifty-four illegal. From an examination of the illegal ballots, it was found the plaintiff received fifty-four and the defendant sixteen, and that these illegal ballots should be deducted from the respective votes as certified by the Democratic Central Committee, leaving the contestant 575 votes and the contestee 614 votes, giving the contestee a majority of thirty-nine votes. The court's finding shows an error or discrepancy of three

182

votes. Now if the fourteen votes set up in the contestant's amended complaint and the five absentee ballots, alleged to be illegal, be treated as illegal, and all as having been voted for Gray, Gray would still have a majority of twenty votes, as the ballots were purged and counted by the trial court. This first amendment to the complaint was but an enlargement of the original complaint, making the same somewhat more definite and certain as to the same class of alleged illegal voters in several townships or voting precincts, and, while we think it was improper to have overruled this first amendment, no prejudice could have resulted, for the reason that, if the contestant had been able to show every fact, as alleged in the amendment, under the findings, as made by the court, Gray would still have a majority, and, while we were unable to determine whether the court specifically determined the validity of the five votes cast by the absentee ballots, that number, added to the fourteen set up in the amendment to the complaint, would have still left, as we have shown, the contestee with the majority of twenty votes. We are impelled, however, to conclude that the court gave due consideration to these ballots of the absentee voters.

But the appellant alleged a new ground of contest in his second amendment to his complaint. That involved thirty-four votes which he alleged were voted for the contestee, Gray. We have already set out the effect of this second amendment; and the fact that the court overruled it and the reasons given therefor. This amendment alleged a new matter, and it was set up and alleged out of time, and the court's ruling in that respect was correct. *Robinson* v. *Knowlton,* 183 Ark. 1127, 1134, 40 S. W. (2d) 450; *Wilson* v. *Cardwell,* 186 Ark. 261, 264, 53 S. W. (2d) 438; *Moore* v. *Childers,* 186 Ark. 563, 566, 54 S. W. (2d) 409.

One other matter was alleged, and that is that the contestee, Gray, was guilty of the violation of the Corrupt Practice Act, in that he had procured the issuance of thirty-four poll tax receipts for certain parties named, with intent to influence said parties to vote for him. It is unnecessary that we go into this matter further than

to say that such facts were not alleged within the period proper for such allegation, and, even though the charge might be found to be true, and on account thereof the contestee be disqualified from holding office, yet the contestant would still have the burden of proving that he had received a majority of the legal votes cast in order that he might be entitled to the nomination.

The rule was announced in the following cases: *Swepston* v. *Barton,* 39 Ark. 549, 555; *Winton* v. *Irby,* 189 Ark. 906, 75 S. W. (2d) 656; *Bohlinger* v. *Christian,* 189 Ark. 839, 75 S. W. (2d) 230.

It follows from the foregoing that the judgment of the circuit court should be affirmed. It is so ordered.