PTAK *v.* JAMESON.

4-8814                                    220 S. W. 2d 592

Opinion delivered May 16, 1949.

Rehearing denied June 13, 1949.

*Rex W. Perkins* and *O. E. Williams,* for appellant.

*Lee Seamster, Tom Pearson, Virgil Ramsey* and *J. S. Jameson,* for appellee.

FRANK G. SMITH, J.   Appellant Ptak and appellee Jameson were opposing candidates for the nomination of the Democratic party for the office of Municipal Judge for the City of Fayetteville in the primary election held in that city February 24, 1948.  The returns of the election as canvassed by the party committee, gave Jameson 975 votes, and Ptak 910 and Jameson was certified as the party nominee.

Thereafter Ptak filed an election contest alleging that many illegal votes had been cast for Jameson, and that he, Ptak, had received a majority of the legal votes cast.  Numerous motions were filed during the progress of the trial and these, with the answer filed by Jameson, raised the issues herein discussed.

The validity and verity of the official list of persons who had paid poll taxes were questioned, but the court held that while there were some irregularities in its prep-

aration and publication, it had been prepared and published in substantial compliance with the law. The accuracy of the list was not questioned and it became the basis of this contest. We approve the holding of the court in this respect.

One of the motions filed was to dismiss the Ptak contest on the ground that he had violated the law by opening the box containing the ballots and returns from Ward No. 4 of the city. There were four wards in which elections were held. The testimony in this respect appears to be that the chairman of the Democratic Committee under whose auspices the election had been ordered and held, had opened the ballot boxes and extracted the poll books and delivered these books to Ptak, who was near, but not actually present when the box was opened. The contention is that this action rendered Ptak ineligible to contest the election under § 4743, Pope's Digest, as being a violation of the law which destroyed the presumption of the integrity of the returns of that box. The court overruled this contention upon the ground that Ptak was not present, and did not participate in the opening of the box, but it was evidently done at his request and for his benefit. This action was highly improper, indeed was unlawful, § 4822, Pope's Digest, and *prima facie* would destroy the integrity of the returns from that box. Dodd v. Gower, 187 Ark. 717, 62 S.W. 2d, 1. However, it was affirmatively shown that the only thing done was to extract the poll books and the ballots themselves were not disturbed, nor was it contended that there had been any mutilation or alteration of the poll books. We therefore affirm the ruling of the court in this respect.

After much testimony had been heard, Ptak filed an amendment to his complaint alleging that a number of electors whose right to vote had been challenged on other grounds, had failed to properly assess and were not qualified electors for that reason. This motion to amend the complaint to contain this additional allegation was filed April 14th, and was overruled as stating a ground of contest not alleged in the original complaint. We

affirm this action. We have held that in an election contest the contestant cannot, after the expiration of the time for filing the contest, amend his complaint so as to set up a new cause of action, but that he may amend his complaint to make it more definite and certain as to any charge in the original complaint, and that the refusal to allow contestant to file an amendment setting up a new ground of contest was proper when the time for filing an amendment had expired. Winton v. Irby 189 Ark. 906, 75 S.W. 2d, 656; Nelson v. Gray 190 Ark. 179, 77 S.W. 2d, 968.

A large number of students of the University, located in Fayetteville, voted at the election and the great majority of these voted for Jameson. Ptak challenged 170 votes on the ground of non residence of the voters, most of which votes were cast by students at the University. Of the 170 thus challenged 104 were challenged on the additional ground that they were not on the certified list of voters and did not present the "other evidence" required by § 4745, Pope's Digest, of their right to vote. The names of the 104 persons referred to appear on what was made as Exhibit "N" to the testimony offered in Ptak's behalf.

Defendant Jameson began the examination of persons whose names were on this Exhibit "N" and examined 18 of these and had 20 others present for examination when the parties entered into a stipulation reading as follows:

"It is understood and agreed by and between counsel for the plaintiff and for the defendant that all witnesses appearing on Plaintiff's Exhibit "N" would testify to the same statement of facts as the eighteen witnesses put on by the defense this morning."

The 18 witnesses examined before this stipulation was filed testified that they did not file poll tax receipts or certified copies thereof with their ballots. They were also examined as to their legal residence and the court found that 4 of the 18 examined were legal residents and counted their votes which were cast for Jameson, to

which action Ptak duly excepted. Later in the trial Ptak proposed to examine others on this Exhibit "N" as to their qualifications and right to vote in addition to the manner in which they had voted.

There was evidently a misunderstanding as to the purpose and effect of this stipulation and the court held that further inquiry into the competency of persons whose names appeared on Exhibit "N" and had not been examined was concluded by the stipulation. This ruling is defended upon the ground that the court construed the stipulation as covering all questions of eligibility, except that of substantial compliance with § 4745, Pope's Digest.

This section deals with the subject of "Evidence of right to vote." It provides that: "No person shall be allowed to vote at any primary election held under the laws of this State, who shall not exhibit a poll tax receipt, or other evidence that he has paid his poll tax within the time prescribed by law to entitle him to vote at the succeeding general State election. Such other evidence shall be: (a) A copy of such receipt duly certified by the clerk of the county court of the county where such tax was paid; Or (b) such person's name shall appear upon the list required to be certified to the judges of election by § 4696. Or, if any person offering to vote shall have attained the age of twenty-one years since the time of assessing taxes next preceding such election * * * and possesses the other necessary qualifications, and shall submit evidence by written affidavit, satisfactory to the judges of election, establishing that fact, he shall be permitted to vote. All such original and certified copies of poll tax receipts and written affidavits shall be filed with the judges of election and returned by them with their other returns of election, and the said judges of election shall, in addition to their regular list of voters, make an additional list upon their poll books of all such persons permitted by them to vote, whose names do not appear upon the certified list of poll tax payers, and such poll books shall have a separate page for the purpose of recording names of such persons."

The certified list of persons who have paid poll taxes is *prima facie* evidence of their right to vote, but there are other qualified electors whose names do not appear on this certified list, and the section just referred to and quoted from is intended to provide the manner and conditions under which such persons may vote and a substantial compliance with the statutes is essential to authorize such persons to vote whose names are not on the official list.

The testimony in regard to such voters is to the following effect. A number of persons who had attained their majority since the regular assessing time had expired voted at the election. The statutes permit such persons to vote, but requires that an affidavit showing that eligibility to vote should be prepared and attached to their ballot. This was done, but a separate list of such voters and all others whose names were not on the official list was not prepared as the statute requires. However, the names of such voters were entered on the poll books or register of voters, and opposite each name was written the words "baby voter." The purpose of the statute was thus accomplished though not in the manner prescribed by the statute. It plainly appeared who these first voters were and nothing more would have been accomplished had a separate list thereof been made.

A number of persons voted on poll tax receipts issued the voters in other counties, and a strict compliance with the statute would have required that their names be also entered upon this separate list. This was not done, but the poll books show the names of all such persons who had voted. This was done by requiring them to exhibit their poll tax receipts and opposite their names there was written the number of their poll tax receipts and the name of the county where issued, so that the regular poll book did in fact contain the information which the special list was intended to supply.

This is a practice not to be approved as the statute should be literally complied with, and the names of all persons voting, which do not appear on the certified list,

should have been shown on a separate list. There is no intimation that any fraud was intended or that any resulted, as the separate list would have furnished no information not disclosed on the regular poll book.

We think the court therefore not in error in holding that the statute had been substantially complied with and that the votes of these electors should not be rejected on account of this irregularity.

The big and controlling question in the case is that of the eligibility of many students whose homes had not been in Fayetteville before enrolling as students at the University. A number of these admitted that they were in Fayetteville for the sole purpose of attending the University, and that they did not intend to become residents of the City. All of these votes were properly rejected. But there were others whose right to vote presented close questions of fact. The court heard the testimony relating to challenging votes, with great patience and passed upon the eligibility of each voter separately.

A large number of young students had served in the Army and upon their discharge had entered the University under the G.I. Bill of Rights. This fact did not render them residents within the meaning of our election laws and the court so properly held.

In passing upon the eligibility of these student voters the court applied the rule to test their eligibility announced in the case of Wilson v. Luck, 203 Ark. 377, 156 S.W. 2d, 795, which is to the effect that a person removing from his old home did not acquire a new domicile until he had abandoned his old one. In other words, for the purpose of voting a person does not have two domiciles with a right to choose between them. His domicile is either at one place or the other.

The court announced the rule to be applied in passing upon the eligibility of the student that "A student who comes to Fayetteville for the sole purpose of securing an education does so without making a change of residence. It is necessary to have a *bona fide* intention to make Fayetteville his home permanently or for an in-

definite period and not to limit it to the time necessary to get an education." This appears to conform with the weight of authority as shown in the annotation to the case of Anderson v. Pifer, 37 A. L. R. 134.

We have before us a record of enormous size, as many of the students were examined touching the permanency of their residence in Fayetteville, but we think the court correctly applied the rule above stated in all cases except as herein stated.

The city passed an ordinance providing for assessing and collecting a license fee for the privilege of operating motor vehicles upon the streets and alleys of the City of Fayetteville, "specifying the rates and terms; Defining certain words, and for other purposes." The ordinance provided that the words "resident of the City of Fayetteville, Arkansas, for the purpose of the ordinance, means any person whose place of abode is within the limits of the said City," with the proviso that the words above quoted should not be construed to include *bona fide* students of the University of Arkansas or the Fayetteville Business College. The City Clerk testified that at first free licenses were issued to all students at either of the above named institutions, but that later the exemptions in the ordinance were construed as applying only to non-resident students and after 1946 stickers were issued only to non-resident students who applied therefor as non-resident students. The City Clerk furnished a list containing 20 names of students who had been issued current automobile stickers as non-residents. No charge was made against these students who otherwise would have been required to pay the $5.00 license fee charged all others. In other words, these 20 students had by their apparent representation that they were non-resident students obtained exemption from paying the license fee required of all others, yet they had voted at the election as residents of the city.

The case of Williams v. Dent, 207 Ark. 440, 181 S. W. 2d, 29, turned upon the question of the residence of one Williams in the City of Little Rock, his right to serve as a member of the city's waterworks commission being de-

pendent upon that fact. It was there said: "Whether Williams had moved from the City was a matter for the Council to determine. The holding in Hillman v. Hillman, 200 Ark. 340, 138 S.W. 2d, 1051, was that in considering evidence relating to one's intentions to become a citizen of a particular place, and in weighing its sufficiency, it was necessary to look behind mere physical action and to appraise human behavior. In other words, evidence of intent is largely controlling, but circumstances may belie protestations of purpose; and the examining body is not required to believe claims of intent when circumstances point to a contrary conclusion."

The circumstances under which the students obtained this exemption from paying the license fee are not detailed. Ordinarily this action in obtaining this exemption which was granted only to non-resident students implies a representation as to their place of residence and unless explanation is made the court should declare them *prima facie* ineligible to vote as residents of the city.

We think the court was in error in the interpretation and application given to the stipulation regarding Exhibit "N" above copied. The parties differ very radically as to its purpose and effect. The court was justified in holding that it was anticipated that the witnesses not called to testify would testify as had those who had been examined, but the insistence is that this related only to the manner in which they had voted, and the record made thereof and that it was not intended to stipulate that they were otherwise qualified electors.

This Exhibit "N" above referred to embraced the names of voters challenged as above stated on the grounds, among others, that the proper return of the names as electors was not made. The defendant began an examination of persons whose names appeared on this Exhibit "N" as the burden was upon him to prove the persons were qualified as their names did not appear on the certified list of voters. Appellant undertook and offered to show after the stipulation above copied had been filed that the persons whose names appeared on

Exhibit "N" were not qualified to vote although they had voted in a manner conforming to law in respect to making a list of such names. In view of the misunderstanding of the purpose and effect of the stipulation we think the court should have permitted appellant to have axamined those persons appellee had not examined whose names appeared on Exhibit "N," including the name of R. L. Tipton whose name had inadvertantly been omitted from the list.

The judgment will, therefore, be reversed and the cause remanded, but upon the new trial it will not be necessary to try again the numerous questions relating to the eligibility of the voters, as we find no error except in two respects. First, the students who had obtained free licenses should be held ineligible in the absence of a showing that no fraud had been practiced by them in obtaining their exemption from the payment of the license fee and: Second, Appellant should be permitted to continue the examination of the persons whose names did appear on Exhibit "N."

The judgment will be reversed for the purpose only of passing upon the two last questions just stated.