PHILLIPS v. MELTON.

5-82                                                   257 S. W. 2d 931

Opinion delivered May 18, 1953.

*Jeptha A. Evans,* for appellant.

*Jeta Taylor* and *John J. Cravens,* for appellee.

ED. F. McFADDIN, Justice. This is an election contest for the office of School Director.

At the General School Election in March, 1952, Truman Phillips (appellant) and Roy Melton (appellee) were rival candidates for the office of School Director of Ozark District No. 14. On the face of the returns, Phillips was certified as elected by a vote of 408 to 406. Thereupon, Melton filed an election contest in the Circuit Court;[1] and also appealed from the County Court order which declared Phillips to have been elected.[2] The two cases were consolidated in the Circuit Court; and after an extended hearing, involving votes challenged for a variety of grounds, the Circuit Court found that Melton had received 399 legal ballots, and Phillips had received only 395. Accordingly, judgment was entered declaring Melton the winner.

From an unavailing motion for new trial, Phillips (joined with the Chairman and Secretary of the County Election Commission, who were named as defendants by Melton) prosecutes this appeal. The issues here have been simplified into a challenge by Phillips of the Circuit Court's ruling on only nine ballots. We list and discuss enough of these to decide the appeal.

I. *Votes of Mr. and Mrs. H. E. Crabtree.* These votes were for Melton; and the Trial Court held them to be valid, notwithstanding Phillips' claim that the Crabtrees were not residents of the Ozark School District at the time of the election. The evidence showed that the Crabtrees had resided in Alix, in the Ozark School District, for many years, and had a home there; that Mr. Crabtree suffered an injury and sought other employment, which he found in Ft. Smith on January 22, 1952 (less than 60 days prior to the election here involved); that the Crabtrees purchased a home in Ft. Smith, and placed their children in school there, and advertised their home in Alix for sale, but soon can-

---

[1] See Act No. 366 of 1951, as found in § 80-321 Cumulative Pocket Supplement of Ark. Stats.

[2] See § 80-311 Ark. Stats., and Act 403 of 1951, as found in § 80-318 Cumulative Pocket Supplement of Ark. Stats. Annotated.

celled the advertisement and withdrew the house from sale. Mr. Crabtree testified that his Ft. Smith work was not necessarily permanent; that he and Mrs. Crabtree intended to keep their home in Alix and return to it; that they considered Alix to be their permanent residence; and that they had not voted, and did not intend to vote, in any election in Ft. Smith, or lose their residence and domicile in Alix.

On the foregoing testimony, the Circuit Court held the Crabtrees were residents of Alix in the Ozark School District. The determination of residence is a question of intention, to be ascertained not only by the statements of the person involved, but also from his conduct concerning the matter of residence. *Ptak* v. *Jameson,* 215 Ark. 292, 220 S. W. 2d 592. Intention is, therefore, a question of fact. In election contests, the findings of the Trial Judge, on factual questions, have the force and effect of a jury verdict. *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, 7 L. R. A. 831; and *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499. Even though we might have reached a different conclusion on the facts, nevertheless, there is substantial evidence to support the finding made by the Trial Court on the question of the residence of the Crabtrees, so we affirm the judgment on the legality of these two votes.

II. *The Vote of Mona Ming.* This was a vote cast for Phillips, but the Trial Court discarded the vote on the testimony of the voter. Mrs. Mona Ming testified that when she entered the polling place, one of the Election Judges asked her for whom she intended to vote; that she told him that she was going to vote for Melton; that he talked to her: stating that her husband had voted for Phillips, and that Melton would "tear up our school." Then she voted for Phillips.

The Trial Court was clearly correct in holding Mrs. Ming's vote for Phillips to be void. An Election Judge should observe absolute impartiality. The language found in § 3-1415 Ark. Stats. is pertinent:

"No officer of elections shall do any electioneering on election day. No person whomsoever shall do any electioneering in any polling room, . . ."

Certainly an election judge has no right to campaign for his candidate at the polling booth, as was done in this case. So we affirm the Trial Court's ruling in cancelling Mrs. Ming's ballot for Phillips.

III. *The Vote of Bobby Bond.* This voter was a maiden voter,[3] and his vote was for Melton, and the Trial Court ruled the vote to be valid. The age of the voter was conceded, but appellant challenges the vote because Bond did not sign the affidavit required of a maiden voter by § 3-227 Ark. Stats.; and appellant claims that our holding in *Logan* v. *Moody,* 219 Ark. 697, 244 S. W. 2d 499, is ruling here.

But the Statute and case just cited relate to a maiden voter in a *primary election,* whereas the election here is a *general election.* Art. 3, § 1 of our Constitution, as well as Amendment No. 8 thereto, uses this language as to a maiden voter:

". . . provided, that persons who make satisfactory proof that they have attained the age of 21 years since the time of assessing taxes next preceding said election and possess the other necessary qualifications, shall be permitted to vote; . . ."

Under the foregoing Constitutional provision, the 1909 Legislature passed Act No. 320 (as found in § 3-123 Ark. Stats.), which provides, *inter alia:*

"Any person who makes satisfactory proof that he has attained the age of 21 years since the time of assessing taxes preceding said election and possesses the necessary qualifications, shall be entitled to vote."

We find no provision in the law governing *general elections* which requires that the "satisfactory proof" shall be by affidavit. In regard to primary elections, the Initiated Act of 1916, as now found in § 3-227 Ark.

---

[3] The words "maiden voter" mean one who becomes of voting age before the election and after the tax assessing period next preceding the election. See Constitutional Amendment No. 8.

Stats., and as discussed in *Logan* v. *Moody, supra,* requires that the "satisfactory proof" shall be by affidavit. Why this distinction should be made between primary elections and general elections is a question for the Legislature, and not for the Court. The fact remains that there is no law for an affidavit being required of a maiden voter in a general election. The Judges and Clerks in this election must have received "satisfactory proof" regarding the age of the voter here questioned, because they allowed him to vote and counted his ballot. We affirm the Trial Court's ruling that the vote was valid.

IV. *The Votes of Eva Wall and Dick West.* Each of these persons voted an absentee ballot for Phillips, and the Trial Court ruled each ballot to be void. We affirm the ruling of the Trial Court on each ballot. Eva Wall's application for absentee ballot was signed by her daughter; and Dick West did not sign any application. Eva Wall duly executed the affidavit to accompany her returned ballot; but Dick West merely signed the form without having the affidavit accomplished. We rest our opinion herein on the failure of each voter to sign the application for the absentee ballot.

Act No. 325 of 1949 is captioned, "An Act to Regulate and Prescribe the Method of Absentee Voting in All Elections; . . ." and pertinent provisions from this Act may be found in § 3-1124 et seq. of the Cumulative Pocket Supplement of Ark. Stats. Annotated. Section 3-1126 prescribes the form of application the voter is required to sign in order to obtain an absentee ballot. The form prescribes the line for the "Signature of the Voter." This certainly means the voter's signature, and not the signature of someone for him. Even if the voter is reduced to signing by mark, still there must be a "signature of the voter." In each of the two votes here at issue, there was no compliance *by the voter* with this Statute. This is not a case of failure of the County Clerk to perform a ministerial act, as was the situation in *Logan* v. *Moody, supra:* this is a case of the failure of the voter to comply with the law.

*Conclusion.* According to the Circuit Court's judgment, Melton received 399 legal votes, and Phillips received 395 legal votes. Only nine votes are challenged by the appellant on this appeal. We have already affirmed the Trial Court's ruling on six of these nine votes. Therefore, it is unnecessary to consider the three remaining votes, as the decision on these could in no wise change the result of the Circuit Court judgment.

Affirmed.