### WOOD v. BROWN.

5-2634                                         361 S. W. 2d 67

Opinion delivered June 4, 1962.

[See supplemental opinion on Rehearing, p. 500, delivered Oct. 8, 1962]

*March Fietz, Penix & Penix, Rhine & Rhine* and *Marshall N. Carlisle,* for appellant.

*Cecil Grooms,* for appellee.

Ed. F. McFaddin, Associate Justice. This is an election contest[1] involving the Democratic nomination for the office of Mayor of the City of Paragould. In the second primary on August 8, 1961, appellant Wood and appellee Brown were the rival candidates. On the face of the returns the vote was: Brown, 1087; and Wood, 1077. The Democratic Central Committee refused Wood petition for a recount and purging of the returns; and in due time Wood instituted this election contest claiming, *inter alia*: (a) twenty-one named persons who voted for Brown were not qualified voters; and (b) other irregularities, one of which—subsequently to be discussed in detail—was the misconduct of an election judge of Box 2 in Ward 2. The prayer of the complaint was that the Court open the ballot boxes, recount the ballots in Box 2 of Ward 2, declare certain specified ballots to be illegal, and declare Wood to be the Democratic nominee. By answer and cross complaint, Brown denied the allegations of the complaint, challenged as irregular certain named ballots cast for Wood, and prayed that the contest be dismissed. Trial in the Circuit Court resulted in judgment for Brown; and the Court found the true result of the election to be: Brown, 1078; and Wood, 1060. On this appeal Wood urges eight points; but the first one is decisive of the appeal.

I. *The Court's Ruling As To Box 2 Of Ward 2.* As regards the said box, Wood had alleged in Paragraph 5 of his complaint:

"V. Contestant further alleges that one of the judges, Jones Horne, helping with the election in Ward 2, in charge of Box 2, made a substantial wager or bet on the outcome of the election and he made a statement that he had changed and thrown out several votes cast for this Contestant, thereby assuring the election of the Contestee, the candidate he was betting on would win the

[1] Some of our more recent election cases are: *Gunter* v. *Fletcher*, 217 Ark. 800, 233 S. W. 2d 242; *Logan* v. *Moody*, 219 Ark. 697, 244 S. W. 2d 499; *Phillips* v. *Melton*, 222 Ark. 162, 257 S. W. 2d 931; *Baker* v. *Hedrick*, 225 Ark. 778, 285 S. W. 2d 910; *Bradley* v. *Jones*, 227 Ark. 574, 300 S. W. 2d 1; *McClendon* v. *McKeown*, 230 Ark. 521, 323 S. W. 2d 542.

election. That such action by this judge was illegal, fraudulent, and a violation of the law, the rules of the Democratic Party of Arkansas, and the right of the legal voters of the City of Paragould, Arkansas, and if true would change the result of the election because of this fraudulent irregularity. That this fraud cannot be corrected unless a complete recount of Box 2 Ward 2 be ordered by this Court and the ballots examined to determine which ballots were changed or not counted.''

After hearing all the evidence the plaintiff Wood desired to offer to support the allegations of the above quoted Paragraph 5, the Court sustained the defendant's demurrer to the evidence[2] which the plaintiff had offered to sustain this Paragraph 5; and the Court then proceeded to hear the evidence offered by both sides on all the other issues in the case. The ruling of the Court on the said Paragraph 5 is challenged by appellant. The Trial Court held that the plaintiff's evidence as regards Paragraph 5 was insufficient to sustain the allegations in the said Paragraph 5. In testing the Court's ruling we must give the plaintiff's evidence its strongest probative force, just as the Trial Court was required to do in passing on the motion. *Guenther* v. *Guenther*, 222 Ark. 278, 258 S. W. 2d 562; *Barrentine* v. *Henry Wrape Co.*, 120 Ark. 206, 179 S. W. 328.

The gravamen of the charge in said Paragraph 5 is that Jones Horne, one of the judges in said Ward 2, Box 2, placed a bet that Brown would win the election; and that Jones Horne, as such judge, had stated that he had changed enough votes in favor of Brown to thereby defeat Wood. There are thus two matters charged: (a) that Jones Horne, an election judge, placed a bet that Brown would win the election; and (b) that Jones Horne stated that he had in fact changed enough votes from

---

[2] The name of the pleading is unimportant. While the defendant's (appellee's) pleading is called a "demurrer to the evidence" (see § 27-1729 Ark. Stats.) it was in fact in a case tried at law "a motion for an instructed verdict," as it would have been styled in a jury trial. In the absence of a jury, as here, it was a "motion for a declaration of law or a finding of fact." See § 27-1744 *et seq.* Ark. Stats.

Wood to Brown to thereby defeat Wood. We consider these two matters.

(a) *An Election Official Betting On The Result Of An Election.* Section 3-1516 Ark. Stats. reads:

"*Betting on elections—Penalty.*—Every person who shall make any bet or wager upon the result of any general, special or primary election in this State, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not less than fifty dollars ($50.00)."

Section 3-704 Ark. Stats. reads:

"*Betting on election as disqualifying judge or clerk.* —No person hereafter shall be competent to act as judge or clerk of any election authorized to be holden by the laws and Constitution of this State who shall have any moneys, goods, wares or merchandise bet on the result of any such election as aforesaid."

That Jones Horne was an election judge of Box 2, Ward 2, was admitted. There is also evidence to show that he placed a wager on the result of the election. Such conduct constituted a violation of law and disqualified Jones Horne from acting as an election judge. But, because an election judge is a law violater does not, *ipso facto* and alone, destroy the integrity of the entire ballot box. Something more needs to be shown. We have a number of cases which hold that a voter is not to be disfranchised because of the failure of the election officials to obey all election laws. *Henderson* v. *Gladish,* 198 Ark. 217, 128 S. W. 2d 257; *Ellis* v. *Hall,* 219 Ark. 869, 245 S. W. 2d 223; *Orr* v. *Carpenter,* 222 Ark. 716, 262 S. W. 2d 280; *Baker* v. *Hedrick,* 225 Ark. 778, 285 S. W. 2d 910. We pass then to the other charge.

(b) *Changing Votes From Wood To Brown.* This allegation, if sustained by the evidence, would make a *prima facie* case to destroy the integrity of the returns from said Ward 2, Box 2, and would require a recount. But the evidence that Wood offered on this allegation is entirely insufficient to make a case for the trier of the

facts to decide. A careful study of the record fails to disclose any substantial evidence to sustain this most serious charge: (1) O. D. Hyde testified that Jones Horne talked about votes in the Harris-Dexter aldermanic race (the contest in that election was tried at the same time as the present contest); but did not make any statement relative to the mayorality race. (2) Jimmy Haggett's testimony was the same as that of Mrs. Hilton Carey. (3) Mrs. Hilton Carey heard Jones Horne say that there was one vote in the mayorality election that was discarded for the uncertainty of the judges as to how the vote was cast. (4) Hilton Carey's testimony was the same as that of his wife. (5) A. D. Dickson's testimony was not as definite on the point at issue as was that of Mrs. Hilton Carey. The foregoing witnesses are all that gave pertinent testimony on the point at issue. No election official at said Box 2, Ward 2 was called to testify; no voter at said Box 2 was called to testify. In short, there was no testimony to sustain the allegations of the complaint as to the specific point here under consideration.

In *Baker* v. *Hedrick*, 225 Ark. 778, 285 S. W. 2d 910, we quoted Judge Eakin's language in the case of *Patton* v. *Coates*, 41 Ark. 111, as to the *quantum* of evidence required to destroy the integrity of an entire box:

" 'The wrong should appear to have been clear and flagrant; and in its nature, diffusive in its influences; calculated to effect more than can be traced; and sufficiently potent to render the result really uncertain. If it be such, it defeats a free election, . . . If it be not so general and serious, the court cannot safely proceed beyond the exclusion of particular illegal votes, or the supply of particular legal votes rejected.' "

It is readily apparent that the plaintiff's testimony in the case at bar completely failed to measure up to the test stated by Judge Eakin. Giving the plaintiff's testimony its strongest force, it was shown that one judge— Jones Horne—had placed a bet on the election, and that he had said that one vote in the mayor's race was dis-,

carded because the judges were unable to tell for whom
it was cast. Such evidence is wholly insufficient to de-
stroy the integrity of an entire box. We strongly con-
demn any election official who places a bet on the elec-
tion; but the statute only subjects such offending official
to prosecution and does not say that the entire box is to
be recounted because of the conduct of such offending
official. So far as the record here shows, the other
judges, clerks, and the Sheriff of Box 2 complied with
the law in every respect. So the Trial Court was correct
in ruling as it did in regard to Paragraph 5 of the
complaint.

II. *The Court's Rulings On The Other Issues.* It
is unnecessary for us to consider the Court's rulings on
the other issues in this case either on the direct appeal
or the cross appeal. The trial in the Circuit Court re-
sulted in a finding that Brown received 1078 votes and
Wood 1060; thus there was a difference of eighteen votes
in favor of Brown. On this appeal Wood has challenged
the Court's ruling on seven specific ballots; and by cross
appeal Brown has challenged the Court's ruling on four
specific ballots. There is no need for us to prolong this
opinion to recite the evidence and rulings as to each of
these, because the result would not be changed even if
the appellant should be correct in his claim on all seven
of the votes; and certainly we need not consider the
appellee's cross appeal if he wins the case on direct
appeal. In *Phillips* v. *Melton,* 222 Ark. 162, 257 S. W.
2d 931, we held that it was unnecessary to consider votes,
the decision of which would not change the result in the
case. In *Black* v. *Jones,* 208 Ark. 1011, 188 S. W. 2d
626, we quoted from the early case of *Swepston* v. *Barton,*
39 Ark. 549:

" 'The remaining grounds of contest, if they are true
in fact, are insufficient to change the result. It is no
valid objection to an election that illegal votes were re-
ceived, or legal votes rejected, if they were not numerous
enough to overcome the majority. (Citing cases.)' To
the same effect, see *Webb* v. *Bowden,* 124 Ark. 244, 187

S. W. 461, where we said: 'But if the returns had been purged of all the illegal votes shown to have been cast in those precincts, it could not have affected the general result. ''It is no valid objection to the election that illegal votes were received or that legal votes were rejected if they were not numerous enough to overcome the majority.'' ' ''

## CONCLUSION

The Court's ruling was correct as regards the insufficiency of appellant's evidence to sustain Paragraph 5 of the complaint; and we affirm the judgment of the Circuit Court.

GEORGE ROSE SMITH, ROBINSON & JOHNSON, JJ., dissent.

JIM JOHNSON, Associate Justice, (Dissenting). This is an election contest involving the Democratic Primary held August 8, 1961 in Paragould. Upon the count certified by the Greene County Central Committee appellee received 1087 votes and appellant 1077 votes in the race for Mayor. A petition by appellant to the Central Committee requesting a recount was denied and this action was thereafter filed. The complaint alleged 21 illegal votes were cast for appellee and in Paragraph V (upon which the result here hinges) it was alleged that Jones Horn, an election judge in Ward 2, Box 2, had made a bet on the outcome of the election and stated he had changed and thrown out certain votes in this box. Appellant prayed specifically for a recount of Ward 2, Box 2.

At the conclusion of appellant's testimony on the allegations contained in Paragraph V of the complaint, the trial court sustained appellee's demurrer to the evidence which in effect was a motion for an instructed verdict. The court then proceeded to determine the validity of certain votes challenged by both parties and upon conclusion of the trial rendered its findings showing the count to be 1078 for appellee and 1060 for appellant. The determination by the court of the validity

of these votes is of no consequence unless appellant is entitled to a recount of Ward 2, Box 2, since our ruling thereon would admittedly not change the result of the election.

It is reasonable, to say the least, that a candidate in an election wherein the difference is only 10 votes is entitled, in the public interest, to be given every consideration in a request for a recount. Judges and clerks being human, it is not without the realm of possibility that 5 honest errors in the tally could be made from over 2,000 votes cast, and this in itself would change the result. I am compelled, therefore, to examine even more closely the matters involved here, for certainly the voters of the City of Paragould are entitled to a true and accurate count of the votes cast.

It is impossible for me to see how the majority can conclude that no question of the accuracy of the count in this box is raised by the activities of Jones Horne. It is practically admitted that Horne made a substantial bet on the Mayor's race. It is further obvious from the record that on the night of the election Horne made certain statements which would throw into grave doubt the accuracy of the count of the box on which he served as judge. Certainly, under our statutes, as the majority points out, Horne was disqualified to serve as judge. This alone should require that the box be looked into. It must be pointed out that the appellant here did not ask that the box be invalidated but only asked that it be recounted to determine if the judges and clerks reported the true and accurate results.

The majority correctly states that the evidence of appellant must be given its strongest probative force. But then it goes on and used as its authority for affirmance the language from *Patton* v. *Coates,* 41 Ark. 111, which, when read in the light of appellant's evidence, leaves no doubt as to what the proper result should be. If the actions set forth in the record before us are not ''clear and flagrant'' and ''sufficiently potent to render the result really uncertain'' then no candidate

will ever be entitled to a recount. The evidence on its face clearly "defeats a free election".

The opinion of the majority which in effect puts its stamp of approval on Horne's questionable acts, in my view, makes a fundamental error in its approach to this question. Without one bit of discussion on the point, it presupposes that in order to obtain a recount of the box in question appellant must show here and now that the result of the election would be changed. This, as I see the matter, is a basically erroneous hypothesis, for if appellant were able to show by proper proof that the result of the election would be changed, a recount would be superfluous and unnecessary and appellant would be entitled to a reversal and declared the winner of the election forthwith. This, of course, is the reason that the majority of courts have adopted the rule as stated in 29 C. J. S. "Elections", Section 290:

"It is held by some authorities that a mere charge or allegation of error, mistake, fraud, misconduct, or corruption in counting the ballots or declaring the results of an election warrants a recount of the ballots on the request of the complaining parties, and under some statutes a recount may be had merely on application therefor and without stating any particular grounds. However, it is more generally held that a resort to the ballots cannot be had unless the contestant shows at least a probability that a recount would decide the election in his favor, that there were frauds, irregularities, or mistakes committed in the acceptance of the ballots and return of their count, * * * *Ordinarily when the state of the evidence is such as to throw uncertainty on the accuracy of the count by the inspectors and judges a judicial count is properly ordered.*" (Emphasis mine) Our own legislature has in effect adopted this rule in contests of elections. Ark. Stats. § 3-1012 requires that the petition to the County Election Commissioners asking for a recount merely show "reasonable grounds for believing that the return, as made by the judges of election, does not give a correct statement of the vote as

actually cast.'' Although this statute applies to elections as opposed to primaries, since there is no pronouncement on the point as to primaries we can certainly look to this enactment to determine the legislature's feeling on the matter.

The voters of Paragould and every other ward and precinct in our nation are entitled, nay, guaranteed that our elections be conducted in such a manner that their votes will be accurately reported. If the evidence presented here does not warrant the recount of the box in question, I do not know what would be necessary to place the accuracy of the count in doubt.

For the reasons stated I respectfully dissent.