The Honorable Jay Bradford State Representative Post Office Box 8367 Pine Bluff, AR 71611-8367
Dear Representative Bradford:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 In a city of the first class, is it permissible for an alderman to temporarily reside outside of his ward (renting) while the home he is building in the ward he represents is under construction?
You have provided the following background information:
 1. The City of White Hall is a First Class city with 6 elected aldermen. Two aldermen represent each of the three Wards. However, all aldermen are elected on a citywide basis.
 2. An alderman who currently resides in Ward 1 has purchased a lot for construction of a new home, has obtained a building permit for construction of a new home and has secured plans and drawings for the construction of a new home.
 3. The alderman has sold his current home and is looking for a temporary home to rent for he [sic] and his family.
RESPONSE
I am unable definitively to answer this question, which involves making a factual determination as to whether the alderman might reasonably be described as maintaining his domicile in the ward he represents, as he is required to do pursuant to A.C.A. §§ 14-43-309 and -310 (Repl. 1998).
In a city of the first class, the Code requires an alderman to reside within — i.e., to maintain his domicile in — the ward he represents. Id.
Section 14-43-307 of the Code provides in pertinent part:
 (a)(1) Candidates for the office of alderman in cities of the first class shall reside in the ward from which they seek to be elected and shall run at large.
 (2)(A) All of the qualified electors of these cities shall be entitled to vote in the election.
* * *
 (b)(1)(A) The city council of any such city or the governing body of any city in transition to the mayor-council form of government is empowered and authorized to provide, by ordinance, that all aldermen be elected by ward, in which event each alderman shall be voted upon by the qualified electors of the ward from which the person is a candidate.
 (B)(i) When so provided by city ordinance, the name of the candidate shall appear upon the ballot only in the ward in which he is a candidate.
 (ii) The city council of these cities may provide for the election of one (1) alderman from each ward citywide and the other aldermen from each ward by the voters of the ward only.
I gather from your factual recitation that the City of White Hall has opted to elect aldermen to the various wards at large. However, the fact that the city conducts at large elections does not obviate the requirement that an elected alderman reside in the ward he represents.See A.C.A. § 14-43-309(a)(1) (Repl. 1998) ("In all general elections for alderman in cities of the first class, the aldermen so elected shall reside in their respective wards, as provided by law."); A.C.A. §14-43-310 (Repl. 1998) ("If any duly elected alderman shall cease to reside in the ward from which he was elected, that person shall be disqualified to hold the office and a vacancy shall exist which shall be filled as prescribed by law."); Ark. Op. Att'y Gen. No. 97-288 (opining that the requirement of an alderman's residency within his ward is absolute and that the question of whether he has abandoned that residency by building a home in another ward is one of fact to be resolved on a case-by-case basis).
The term "residence" as a qualification for office holding is generally deemed to denote "domicile." As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-105:
 . . . [S]tatus for office-holding purposes is determined by the officer's domicile. See A.C.A. § 7-5-201(b) (conditioning voter residence on domicile); Valley v. Bogard, 342 Ark. 336, 345, 28 S.W.3d 269 (2000), citing Charisse v. Eldred, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972) (equating "residence" with "domicile" in determining the qualifications of a public official). Generally," residence" ordinarily means physical presence within the jurisdiction while "domicile" also includes the subjective intent to maintain one's permanent home in the jurisdiction. Hogan v. Davis, 243 Ark. 763, 422 S.W.2d 412 (1967). A person may have two places of residence, but only one domicile. The Arkansas Supreme Court has stated that" domicile" is dependent to some extent upon the intention of the person involved. Charisse v. Eldred, supra, citing Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953); Ptak v. Jameson, 215 Ark. 292, 220 S.W.2d 592
(1949); Wilson v. Luck, 201 Ark. 594, 146 S.W.2d 696 (1941); and Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887). See also Pike Co. Sch. Dist. No. 1, supra; Op. Att'y Gen. Nos. 95-222A and 92-112. The determination of a person's domicile is a question of fact in each instance. Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953).
In Ark. Op. Att'y Gen. No. 95-057, one of my predecessors observed:
 [W]here residence is synonymous with "domicile," it generally means "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere." Black's Law Dictionary 435 (5th ed. 1979). "Residence" on the other hand, as distinguished from "domicile," ordinarily signifies living in a particular locality without necessarily the intent to make it a fixed and permanent home. "Residence" is defined in Black's as "[p]ersonal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Id. at 1176.
Under the above definitions, it would appear that the alderman might qualify as maintaining a "residence" in the ward where he proposes to rent property while nevertheless maintaining a "domicile" in the ward he represents. Your recitation of the underlying facts implies that the alderman at issue maintained his domicile in the ward he represents at the time of his election; that he has taken steps to construct a new home in that same ward; that he has sold his former domicile; and that he is looking for a "temporary home to rent" outside the ward he represents. The underlying question, then, is whether a house under construction might be considered the domicile of an alderman who was clearly domiciled in this ward before the new construction began, but who has sold his former home and proposes to reside outside the ward during the course of construction.
The situation you describe is very similar to one addressed in Ark. Op. Att'y Gen. No. 94-208, in which one of my predecessors offered the following analysis in considering whether an individual could run for justice of the peace in a district in which he was building a house while residing in another district:
 In a case applying article 19, 35 [sic: "19, 3"] and 4 of the Arkansas Constitution,[1] the Arkansas Supreme Court explained that intent is only relevant when a person has more than one residence or has temporarily left his place of residence. Davis v. Holt, 304 Ark. 619, 804 S.W.2d 362 (1991). The facts as presented in your question indicate that although the candidate currently lives outside the district, he is building a house in the appropriate district. A fact question therefore arises as to his intent with respect to his domicile.
 In a case applying article 7, 41 of the Arkansas Constitution,[2] a candidate, after being nominated for Justice of the Peace, temporarily moved outside of his district into a house, made improvements on the house and stayed there until he found an apartment in the district where he was nominated. He moved back to the district where he was nominated twenty days before the general election. The Arkansas Supreme Court held that the candidate never abandoned his residency and therefore, was qualified for the general election.
 The answer to your question will therefore depend on the intent of the candidate as to his "domicile." Among the factors looked at to determine whether a person has requisite intent to establish a domicile in a particular place are declarations of the parties, exercise of political rights, payment of personal taxes, a house of residence and a place of business. Gooch v. Gooch, 10 Ark. App. 432, 664 S.W.2d 900
(1984). These factors must be evaluated in an attempt to determine a candidate's intent as to domicile.
My predecessor thus suggested in Opinion No. 94-208 that an office seeker who intended to domicile in a house under construction in the district he hoped to represent might, if the attendant circumstances did not warrant a contrary conclusion, be deemed an eligible candidate even though he temporarily resided in another district. In my opinion, my predecessor was correct in his analysis, which repeatedly stressed that the operative inquiry must be made on a case-by-case basis considering all of the facts — including the fact that his house was not yet completed. Although the record in this case might contain evidence that leads to a different conclusion, I believe that a court might well conclude that if an alderman domiciled in a given ward determines to construct a new house in that ward, leading to his temporary residence in a different ward, he should be considered a continuing domiciliary of the ward he serves. SeeState v. Craighead County Board of Election Commissioners, 300 Ark. 405,779 S.W.2d 169 (1989) (leaving undisturbed a trial court's finding, interalia, that a candidate for justice of the peace, who was an incumbent by the time of the appeal, was eligible to run when he had moved out of his district following the primary but bought a lot in his district intending to return). However, only a finder of fact can determine, based on a totality of the circumstances, whether the alderman that is the subject of your request would remain a domiciliary of his ward if he temporarily resided outside the ward.
Finally, I am enclosing for your information Ark. Ops. Att'y Gen. Nos.97-288, 95-401 and 92-112, all of which deal with the rules that will apply in making residency determinations for a candidate or officeholder. I will not repeat my predecessor's analyses here but will note that I fully subscribe to his statement of the law.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosures
[1] Article 19, § 3 provides that "[n]o persons shall be elected to or appointed to fill a vacancy in any office who does not possess the qualifications of an elector." Article 19, § 4 provides:
 All civil officers for the State at large shall reside within the State, and all district, county and township officers within their respective districts, counties, and townships, and shall keep their offices at such places therein as are now or may hereafter be required by law.
[2] The referenced case is Booth v. Smith Garner, 261 Ark. 838,552 S.W.2d 19 (1977). Article 7, § 41 of the Arkansas Constitution provides that "[a] justice of the peace shall be a qualified elector and a resident of the township for which he is elected."