The Honorable Henry H. Boyce Prosecuting Attorney Third Judicial District 208 Main Street, Suite 31 Newport, AR 72112
Dear Mr. Boyce:
I am writing in response to your request for an opinion on the following:
 I have been approached by a concerned citizen of Randolph County who seeks an opinion regarding the following issue:
 Assume duly elected alderman moves outside the city limits of the township which he serves. Subsequently he casts several votes including a vote to issue municipal bonds in order to fund a new fire station. Did the alderman's move outside the city limits nullify his authority to vote and pass local legislation as an alderman? If his vote was the deciding vote and he is serving illegally, then is the legislation he helped pass invalid?
 RESPONSE
In my opinion, generally, an alderman that has moved outside the ward that he or she represents will likely be considered a de facto officer and actions taken by the alderman as a de facto officer will be upheld. The validity of acts of a de facto officer is the same as a de jure
officer and the mere existence of de facto status does not invalidate his or her actions. It is a question of fact, however, that can only be determined by examination of the intent of the alderman as to whether the alderman has ceased to reside, or be "domiciled," within the ward he or she represents for the purposes of eligibility under A.C.A. §§14-43-310 (Repl. 1998) (addressing cities of the first class) or14-44-103(b)(2) (Supp 2005) (addressing cities of the second class).
As an initial matter, the question presented by your constituent references "townships" as the area served by an alderman. Alderman are elected by wards, see A.C.A. §§ 14-43-308(a)(1) (Repl. 1998) (with respect to cities of the first class, "the aldermen . . . shall reside in their respective wards . . ."); and 14-44-103(b)(1)(A) (Supp. 2005) (with respect to cities of the second class "A candidate for . . . alderman . . . shall reside in the ward from which he or she seeks to be elected . . ."), and I assume that your constituent is referring to an alderman's "ward" based on the concern that the alderman has moved out of the geographic area he or she was elected to represent.
If the alderman in question is no longer qualified to hold his or her office, any actions by the alderman will be valid as the votes of ade facto officer. One of my predecessor's described the status of defacto officers are follows:
 Similar issues were discussed in Ops. Att'y Gen. 98-128 and 93-031. In each opinion the case of Pennington v. Oliver, 245 Ark. 251, 431 S.W.2d 843 (1968) was cited. The following excerpt from Opinion 98-128 fairly summarizes the applicable law:
 It is well established that the acts of de facto officers are valid. Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996); Ops. Att'y Gen. Nos. 97-257; 97-003.
With regard to this issue, the Pennington court stated:
 [W]e conclude that [the board members in question] were de facto members of the Board, and that their actions were therefore valid. This is in accord with the holdings of this Court in Faucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279. There we find this statement:
 "A person who enters into an office and under takes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto, though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned."
 Pennington, supra, at 254.
It has also been stated that
 it is generally held that persons having color of title may be regarded as de facto officers, even though legally they are not eligible for the position or do not possess the statutory qualifications for the office. One duly appointed or elected to an office but who has failed to take the oath required or to execute a bond within the time prescribed, or one whose bond is irregular, is at least a de facto officer so that his acts are valid as to the public.
67 C.J.S. Officers 269.
Moreover, this office has previously opined that the failure to take an oath of office as required by law does not affect the validity of acts taken by the person who failed to take the oath. See Op. Att'y Gen. Nos. 93-031; 92-168.
 Opinion 98-128 at pp. 4-6. See also Murphy v. Shepard, 52 Ark. 356 (1889) (upholding the validity of the acts of an assessor, as against a collateral attack, who failed to take the general oath of office).
 It is often stated that the actions of a " de facto " officer cannot be challenged "collaterally." Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 944 (1996) and Appleby v. Belden Corp., 22 Ark. App. 243, 738 S.W.2d 807 (1987). That is, actions taken by such an officer cannot be challenged in a proceeding collateral to the eligibility of the officer. Rather, the qualifications of a " de facto " officer must be challenged directly, in a direct proceeding to remove the officer from his post. Id. During the time the officer is allowed to retain his position, his actions will be accorded validity. Id.
Op. Att'y Gen. 2001-018 at 3-4.
Specifically, your constituent is concerned with the residency qualification of the alderman in question. Aldermen serving cities of the first class and cities of the second class are required to be residents of the wards which they represent. A.C.A. § 14-43-308(a)(1); and A.C.A. § 14-44-103(b)(1). [1] If a duly elected alderman ceases to reside within the ward he or she represents, the Arkansas Code provides that such an individual shall be disqualified to hold the office and a vacancy will be created. A.C.A. §§ 14-43-310 (Repl. 1998) ("If any duly elected alderman shall cease to reside in the ward from which he was elected that person shall be disqualified to hold the office and a vacancy shall exist . . ." in a city of the first class); and14-44-103(b)(2) ("If any duly elected alderman ceases to reside in the ward from which he or she was elected, that person shall be disqualified to hold the office and a vacancy shall exist . . ." in a city of the second class). I have previously discussed the standards for the term "residence" as a qualification for office holding in Op. Att'y Gen.2004-203. I stated, in pertinent part:
 The term "residence" as a qualification for office holding is generally deemed to denote "domicile." As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-105:
 . . . [S]tatus for office-holding purposes is determined by the officer's domicile. See A.C.A. § 7-5-201(b) (conditioning voter residence on domicile); Valley v. Bogard, 342 Ark. 336, 345, 28 S.W.3d 269 (2000), citing Charisse v. Eldred, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972) (equating "residence" with "domicile" in determining the qualifications of a public official). Generally, "residence" ordinarily means physical presence within the jurisdiction while "domicile" also includes the subjective intent to maintain one's permanent home in the jurisdiction. Hogan v. Davis, 243 Ark. 763, 422 S.W.2d 412 (1967). A person may have two places of residence, but only one domicile. The Arkansas Supreme Court has stated that "domicile" is dependent to some extent upon the intention of the person involved. Charisse v. Eldred, supra, citing Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953); Ptak v. Jameson, 215 Ark. 292, 220 S.W.2d 592
(1949); Wilson v. Luck, 201 Ark. 594, 146 S.W.2d 696 (1941); and Wheat v. Smith, 50 Ark. 266, 7 S.W. 161 (1887). See also Pike Co. Sch. Dist. No. 1, supra; Op. Att'y Gen. Nos. 95-222A and 92-112. The determination of a person's domicile is a question of fact in each instance. Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953).
In Ark. Op. Att'y Gen. No. 95-057, one of my predecessors observed:
 [W]here residence is synonymous with "domicile," it generally means "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere." Black's Law Dictionary 435 (5th ed. 1979). "Residence" on the other hand, as distinguished from "domicile," ordinarily signifies living in a particular locality without necessarily the intent to make it a fixed and permanent home. "Residence" is defined in Black's as "[p]ersonal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Id. at 1176.
Op. Att'y Gen. 2004-203 at 3-4.
As described above, determining whether an alderman has moved his or her domicile from the ward that he or she represents must be determined by evaluating all the surrounding facts. I am unable and unauthorized to make such factual determinations in the limited context of an Attorney General's Opinion.
Even if an alderman were to no longer be domiciled in the ward he or she represents, the alderman would remain a de facto officer until removed from office, in my opinion. As a de facto officer, it is my opinion that all official duties undertaken would be valid exercises of power.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE
Attorney General
MB:JMD/cyh
[1] There are no similar residency requirements for aldermen elected by wards in incorporated towns. See, e.g., A.C.A. § 14-45-102 (Repl. 2005).