The Honorable Jim Medley State Representative 2200 Carthage Drive Fort Smith, AR 72901-6820
Dear Representative Medley:
I am writing in response to your request for an opinion on the following:
 Quite a number of my constituents have asked me to request an Attorney General's opinion as to whether a person who is elected for a specific city ward and who resides in the ward at the time of election can continue to serve in that position when they no longer physically live in that ward.
 One of the issues raised is whether the elected official in question who no longer lives in the ward for which they were elected may be perceived as residing there if they continue to own a home and keep it in good condition "maintained" in order to qualify as the elected City Board member to represent that particular ward.
 It would seem that a reasonable person would recognize that an elected official living outside of the zone for which they were elected has for all practical purposes given up that right to serve as an elected official for that particular ward. Unfortunately, it appears that an Attorney General's opinion is needed.
RESPONSE
In my opinion, whether an alderman has ceased to reside, or be "domiciled," in the ward he or she represents for the purposes of eligibility under A.C.A. §§ 14-43-310 *Page 2 
(Repl. 1998) (addressing cities of the first class) or 14-44-103(b)(2) (Supp 2007) (addressing cities of the second class) is a question of fact that can only be determined by all the surrounding circumstances. I have, however, set forth below the general standard for determining the issue. Additionally, I will note that an alderman who has removed his domicile outside the ward that he represents will nonetheless be considered a de facto officer unless removed from office. Actions taken by a de facto officer are valid while he is permitted to retain the office.
Your request for an opinion addresses the residency requirements of city aldermen. Aldermen serving cities of the first class and cities of the second class are required to be residents of the wards which they represent. A.C.A. § 14-43-308(a)(1); and A.C.A. § 14-44-103(b)(1).[1]
If a duly elected alderman ceases to reside within the ward he or she represents, the Arkansas Code provides that such an individual shall be disqualified to hold the office and a vacancy will be created. A.C.A. §§14-43-310 (Repl. 1998) ("If any duly elected alderman shall cease to reside in the ward from which he was elected that person shall be disqualified to hold the office and a vacancy shall exist . . ." in a city of the first class); and 14-44-103(b)(2) ("If any duly elected alderman ceases to reside in the ward from which he or she was elected, that person shall be disqualified to hold the office and a vacancy shall exist . . ." in a city of the second class). One of my predecessor's has previously discussed the standards for the term "residence" as a qualification for office holding in Op. Att'y Gen. 2004-203, stating, in pertinent part:
 The term "residence" as a qualification for office holding is generally deemed to denote "domicile." As one of my predecessors noted in Ark. Op. Att'y Gen. No. 2002-105:
 . . . [S]tatus for office-holding purposes is determined by the officer's domicile. See A.C.A. § 7-5-201(b) (conditioning voter residence on domicile); Valley v. Bogard, 342 Ark. 336, 345, 28 S.W.3d 269 (2000), citing Charisse v. Eldred, 252 Ark. 101, 102-03, 477 S.W.2d 480, 480 (1972) (equating "residence" with "domicile" in determining the qualifications of a public official). Generally, "residence" ordinarily means physical presence within the jurisdiction while "domicile" also includes the subjective intent to *Page 3 
maintain one's permanent home in the jurisdiction. Hogan v. Davis, 243 Ark. 763, 422 S.W.2d 412
(1967). A person may have two places of residence, but only one domicile. The Arkansas Supreme Court has stated that "domicile" is dependent to some extent upon the intention of the person involved. Charisse v. Eldred, supra, citing Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953); Ptak v. Jameson, 215 Ark. 292, 220 S.W.2d 592 (1949); Wilson v. Luck, 201 Ark. 594, 146 S.W.2d 696
(1941); and Wheat v. Smith, 50 Ark. 266, 7 S.W. 161
(1887). See also Pike Co. Sch. Dist. No. 1, supra; Op. Att'y Gen. Nos. 95-222A and 92-112. The determination of a person's domicile is a question of fact in each instance. Phillips v. Melton, 222 Ark. 162, 257 S.W.2d 931 (1953).
 In Ark. Op. Att'y Gen. No. 95-057, one of my predecessors observed:
 [W]here residence is synonymous with "domicile," it generally means "that place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. . . . The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere." Black's Law Dictionary 435 (5th ed. 1979). "Residence" on the other hand, as distinguished from "domicile," ordinarily signifies living in a particular locality without necessarily the intent to make it a fixed and permanent home. "Residence" is defined in Black's as "[p]ersonal presence at some place of abode with no present intention of definite and early removal and with purpose to remain for undetermined period, not infrequently, but not necessarily combined with design to stay permanently." Id. at 1176.
Op. Att'y Gen. 2004-203 at 3-4. *Page 4 
As described above, determining whether an alderman has moved his or her domicile from the ward that he or she represents must be determined by evaluating all the surrounding facts. I regret that I am unable to make such factual determinations in the limited context of an Attorney General's Opinion.
I will note that even if an alderman were to no longer be domiciled in the ward he or she represents, the alderman would remain a de facto
officer until removed from office, in my opinion. One of my predecessors described the status of de facto officers are follows:
 Similar issues were discussed in Ops. Att'y Gen. 98-128
and 93-031. In each opinion the case of Pennington v. Oliver, 245 Ark. 251, 431 S.W.2d 843 (1968) was cited. The following excerpt from Opinion 98-128
fairly summarizes the applicable law:
 It is well established that the acts of de facto officers are valid. Chronister v. State, 55 Ark. App. 93, 931 S.W.2d 444 (1996); Ops. Att'y Gen. Nos. 97-257; 97-003.
 With regard to this issue, the Pennington court stated:
 [W]e conclude that [the board members in question] were de facto members of the Board, and that their actions were therefore valid. This is in accord with the holdings of this Court in Faucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279. There we find this statement:
 "A person who enters into an office and under takes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto, though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, *Page 5 
from being an officer de facto with respect to his official acts, in so far as third persons are concerned."
 Pennington, supra, at 254.
 It has also been stated that
 it is generally held that persons having color of title may be regarded as de facto officers, even though legally they are not eligible for the position or do not possess the statutory qualifications for the office. One duly appointed or elected to an office but who has failed to take the oath required or to execute a bond within the time prescribed, or one whose bond is irregular, is at least a de facto officer so that his acts are valid as to the public.
 67 C.J.S. Officers 269.
 * * *
Op. Att'y Gen. 2001-018 at 3-4, quoting Op. Att'y Gen. 98-238 at pp. 4-6.
I agree with my predecessor's conclusion and, in my opinion, all official duties undertaken by a de facto officer would be valid exercises of power.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] There are no similar residency requirements for aldermen elected by wards in incorporated towns. See, e.g., A.C.A. § 14-45-102 (Repl. 2005).
 *Page 1