Dewey ALLEN, Cleve Bond, and J.C. Cole *v.* MALVERN
         COUNTRY CLUB, et al.

87-341                                    746 S.W.2d 546

                 Supreme Court of Arkansas
          Opinion delivered March 21, 1988

66

*James C. Cole*, for appellants.

*William C. Gilliam*, for appellee Malvern Country Club; *Glover, Glover & Roberts*, by: *Mark Roberts*, for appellee Ed Howard; and *Chris E. Williams*, for appellee Clyde Gibbons.

JACK HOLT, JR., Chief Justice. Appellants Dewey Allen, Cleve Bond, and J. C. Cole, as members and purported stockholders of the appellee Malvern Country Club ("the Club"), brought suit to enforce stockholders' rights against the Club and certain of its officers. The Club, a non-profit corporation, filed an answer which in part relied on the defense that nonprofit corporations as a

matter of law cannot issue stock and therefore do not have stockholders. Appellants filed a motion to strike that defense from the Club's answer. The motion was denied by the chancellor on the grounds that the defense was valid despite provisions for the issuance of stock in the Club's articles of incorporation and notwithstanding that shares of stock had been sold. Appellants declined to proceed further, whereupon the court entered an order dismissing the suit. This appeal followed.

Appellants argue that: (1) a 1956 circuit court order approving incorporation of the Club pursuant to its articles of incorporation precluded relitigation of the issue of whether the Club had the power to issue stock; (2) principles of corporate law together with the statutes in effect in 1956 support the Club's issuance of stock; (3) application of the 1963 Arkansas Nonprofit Corporation Act, which mandates that non-profit corporations cannot issue shares of stock, deprives appellants of due process and the right to property, or, in the alternative, the Act contains a "grandfather" clause by which the Club's original articles of incorporation remain valid even under the new law; and (4) once the Club sold stock pursuant to the contractual relationship created by the articles of incorporation and accepted the proceeds of such sales from appellants and others similarly situated, the Club could not assert as a defense that its actions in that regard were ultra vires.

The posture of this case is such that we find appellants have elected to stand upon the single issue of whether the Malvern Country Club has "stockholders." Because we agree with the chancellor's conclusion that as a matter of law the Club could not issue stock and therefore did not have stockholders, dismissal of the suit was proper.

In 1956, a petition for incorporation was filed with the Hot Spring County Circuit Court requesting that the court enter an order incorporating the Malvern Country Club as a nonprofit corporation—the object and purpose of the Club being to promote the pleasure, recreation, and bodily health of its members by means of a private country club. The petition, which was approved by the circuit court, included a proposed constitution which contained articles of incorporation. In relevant part, article five provided:

STOCK CERTIFICATE HOLDING MEMBERS: 200 members may be elected to membership in this class upon payment of a stockholder's fee of $350.00. This class will constitute the sole voting membership of the Club. A certificate of stock shall be issued, entitling the holder thereof to all the privileges of the Club upon such terms and conditions as may be prescribed by the By-Laws, and further entitling such members to share in the property or assets of the organization

The articles of incorporation also provided for additional classes of members not authorized to own stock. Appellant J. C. Cole was a charter member and stockholder. The remaining appellants were stockholders.

At the time of incorporation, Ark. Stat. Ann. §§ 64-1301—64-1308 (1947) governed benevolent associations including those organized for the promotion of bodily or mental health. Those sections have been superseded. Nonprofit corporations such as the Club are now governed by the 1963 Arkansas Nonprofit Corporation Act, which was originally codified at Ark. Stat. Ann. §§ 64-1901—64-1921 (Repl. 1980) but is now found at Ark. Code Ann. §§ 4-28-201—4-28-206 and 4-28-209—4-28-223 (1987).

Sometime in 1969, the Club filed its articles of incorporation with the Secretary of State pursuant to the new Act. In May 1987, allegedly without notice to several stockholders, certain amendments to the articles of incorporation were proposed and adopted by the Club's members, some of whom did not hold shares of stock. In June 1987, appellants filed the underlying action seeking a declaration of their rights as stockholders and for other relief.

A review of superseded sections 64-1303—64-1308 reveals absolutely no authority for the issuance of stock by nonprofit corporations such as the Club. Conversely, those statutes which at the time of the Club's incorporation were applicable to general business corporations specifically made provision for the issuance of stock. *See* Ark. Stat. Ann. §§ 64-201—64-224 (1947). In *Chamber of Commerce* v. *Barton*, 195 Ark. 274, 112 S.W.2d 619 (1937), this court emphasized that the statutes governing business corporations *do not* cover corporations organized under the

sections governing benevolent associations (nonprofit corporations), which we described as:

> organizations . . . formed without capital stock, [and] operated not for a livelihood and not for profits, but solely as a means of enhancing or promoting the general welfare in some particular kind or class of activity.

■ Turning to the 1963 Arkansas Nonprofit Corporations Act, section 4-28-203 provides that the Act shall be applicable to all corporations organized thereunder and all not-for-profit corporations formerly organized under any act repealed by the new law. Section 4-28-202 defines a not-for-profit corporation as one "no part of the income of which is distributable to its members, directors, or officers," and section 4-28-219 specifically sets out that shares of stock and dividends are prohibited.

> (a) A [nonprofit] corporation shall not have or issue shares of stock.

> (b) No dividend shall be paid and no part of the income of a [nonprofit] corporation shall be distributed to its members, directors or officers.

As such, neither under the statutes in effect at the time of incorporation nor under the statutes which now govern non-profit corporations is there any statutory authority for the issuance of stock by entities such as the appellee Club. That result is in accordance with the general rule that nonprofit corporations simply do not issue stock and therefore have members rather than stockholders. 18A Am. Jur. 2d *Corporations* § 184 (1985).

In an attempt to avoid the proscriptions of the 1963 Act, appellants call our attention to section 4-28-204, which provides:

> (a) The provisions of [this Act] shall in no way affect any nonprofit corporation chartered under and in accordance with the laws of this state existing prior to [the effective date of this Act].

> (b) Any such nonprofit corporation organized prior to [the effective date of this Act] and which has not filed a copy of the order or action whereby they were granted corporate status under the then existing law may file a certified copy of the order or action . . . with the Secretary

of State of Arkansas, and such filing shall evidence the incorporation and shall entitle the organization to recognition of its legal status, the same as one formed under the provisions of this Act.

■ Appellants argue that under section 4-28-204(a), the Act would not affect corporations chartered under preexisting statutes. Subsection (a), however, explicitly requires that such corporations originally be chartered in accordance with the laws of this state prior to the effective date of the new Act. It is clear that the Club was not chartered in accordance with the statutes in effect at the time of incorporation as those statutes did not give entities such as the Club the power to issue stock. We reach the inescapable conclusion that there is not now, nor has there ever been, statutory authority for the issuance of stock by the appellee Club.

■ Corporations organized under the laws of this state are but creatures of the legislature, *Arkansas Stave Company* v. *State*, 94 Ark. 27, 125 S.W. 1001 (1910), and the legislative power to create corporations cannot be delegated to the courts. 18A Am. Jur. 2d *Corporations* § 151 (1985). Hence, we find no support for appellants' argument that court approval in 1956 of provisions for the issuance of stock in the Club's articles of incorporation, absent statutory authority therefor, in any way validated the stock.

■ The laws of a particular state which grant or restrict the powers of a corporation become part of the articles of incorporation or charter of that corporation. *Arkansas Stave Co., supra.* Anyone seeking to obtain the benefit of provisions within such articles of incorporation or charter takes that benefit with the burdens prescribed by the relevant statutes, and if there is a conflict between the charter and the statutes under which the charter was issued, the charter must yield to the laws of the state. 18A Am. Jur. 2d *Corporations* §§ 73—76 (1985).

■ Much like the power to create the corporate status, the power to create corporate stock is a legislative function which must be exercised for such stock to have legal existence; the power to issue stock must be specifically granted by the statutes under which a corporation is formed, which results in the rule that the power to issue stock is not held to be among the incidental or

implied powers of a corporation. 11 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5153 (rev. perm. ed. 1986); 18A Am. Jur. 2d *Corporations* § 485 (1985). As such, we reject appellants' contention that the issuance of stock was incidental to the purpose of the Club or that it was an implied power of the Club.

■ The inevitable consequence of the absence of specific statutory authorization for the issuance of stock is that, by law, such stock is void, confers no rights on the person to whom issued, and creates no liabilities; the rule of voidness applies to disputes between shareholders or between shareholders and the corporation. *Id.* at § 509; W. Fletcher, *supra*, at § 5167. In light of the foregoing, application of the 1963 Act can work no deprivation of property since the stock at issue was void from the outset. Equally, there is no merit to the argument that having accepted the benefits of the sale of its stock, the Club was precluded from asserting that its issuance of stock was ultra vires. The sale of stock was—like the stock itself—completely void for lack of statutory authority, not merely ultra vires, and no rights or liabilities were created thereby.

■ Finally, while the principle of estoppel might apply to corporations having the power and authority to issue stock pursuant to the laws of the state:

> where there is an inherent lack of power in the corporation to issue the stock, neither the corporation, nor the person to whom the stock is issued, is estopped to question its validity, since an estoppel cannot operate to create stock which, under the law, cannot have existence . . . .

W. Fletcher, *supra*, at § 5169.

Affirmed.