John Mark CLEMENT  *v.*  Charlie DANIELS, Arkansas Secretary of State, State Board of Elections Commission, Bill Halter

06-519                                                    235 S.W.3d 521

Supreme Court of Arkansas
Opinion delivered May 17, 2006

*Whetstone & Spears*, by: *Joe Woodson, Jr., Don Spears, Bud Whetstone*, and *Kevin Odum*, for appellant.

*Allen Law Firm*, by: *H. William Allen, Christian Harris*, and *Kevin Lemley*; and *Hilburn, Calhoon, Pruniski & Calhoun, Ltd.*, by: *Sam Hilburn* and *Mark Halter*, for appellee Bill Halter.

TOM GLAZE, Justice. On Tuesday, March 21, 2006, appellee Bill Halter filed as a candidate for Lieutenant Governor in the Democratic Primary Election scheduled for Tuesday, May 23, 2006. On Friday, May 5, 2006, appellant John Mark Clement petitioned the Pulaski County Circuit Court for a declaratory judgment and writ of mandamus seeking to disqualify Halter as a candidate for Lieutenant Governor.[1] Clement's petition properly named Secretary of State Charlie Daniels and the State Board of Election Commissioners as parties. *See Willis v. Circuit Court of Phillips County*, 342 Ark. 128, 27 S.W.3d 372 (2000). Clement alleged that Halter failed to meet the seven-year residency requirement under article 6, § 5 of the Arkansas Constitution, as amended by Amendment 6. Article 6, § 5 provides, "the Lieutenant Governor shall possess the same qualifica-

---

[1] A review of the record indicates that Clement initially filed only a petition for writ of mandamus; however, the trial court's order reflects that at the May 9, 2006, hearing, Clement orally amended his petition to include a request for declaratory judgment. *See State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989) (providing that an action for mandamus, coupled with a request for declaratory judgment, is the proper method for enforcing Ark. Code Ann. § 7-5-207(b) (Repl. 2000)).

tions of eligibility for the office of Governor."[2] Halter promptly filed his response on May 5, 2006, wherein he stated that he met the constitutional seven-year residency requirement, and affirmatively asserted that Clement lacked standing to bring this action. In addition, Halter requested an expedited hearing and decision by the trial court.

The trial court granted the parties' requests for an expedited hearing, which was held on Tuesday, May 9, 2006 — one day after voters commenced early voting and absentee voting in the Democratic Primary Election. On May 10, 2006, the trial court entered its order denying Clement's petition; from this order, Clement brings his appeal.

First, we address the issue of whether Clement has standing to bring this action. That question is easily decided on the basis of *Jacobs v. Yates*, 342 Ark. 243, 27 S.W.3d 734 (2000), in which we addressed this issue of standing. There, Arlanda Jacobs, a candidate for justice of the peace for District Seven in Hot Spring County, challenged the qualifications of her opponent, Doris Tyler. Jacobs alleged that Tyler was not a resident of District Seven,[3] and therefore was ineligible to run for that position. Jacobs contended that once Tyler was removed from the ballot as a candidate, Tyler lost her standing to challenge Jacobs's qualifications. This court disagreed, stating that Arkansas's established law gives a voter the right to challenge the qualifications and eligibility of a candidate, providing remedies to voters, candidates, and other interested parties. *See also Tittle v. Woodruff*, 322 Ark. 153, 907 S.W.2d 734 (1995). Because Tyler was a voter and citizen of the state and of Phillips County, the *Jacobs* court held that Tyler had standing to bring suit to challenge Jacobs's qualifications.

█ The decision in *Jacobs* is applicable to the case now before us. In short, Clement is a voter and a life-long citizen of the state and of Hot Spring County, which gives him standing to bring this action challenging whether Halter, as a candidate for Lieutenant Governor, possesses the constitutional qualifications to hold that office, if elected.

Next, we point out that Clement initiated this special action, testing whether Halter possesses the qualifications of eligibility for

---

[2] Article 6, § 5 provides, "No person shall be eligible for the Office of Governor except a citizen of the United States who ... shall have been seven years a resident of this state."

[3] As is true in the instant case, absentee and early voting had already commenced.

Lieutenant Governor, pursuant to Ark. Code Ann. § 7-5-207(b).[4] Section 7-5-207(b) provides a means for a *voter* to raise a *pre-election* attack on a candidate's eligibility to stand for election and for removal of that ineligible candidate's name from the ballot. *Tumey v. Daniels*, 359 Ark. 256, 196 S.W.3d 479 (2004); *State v. Craighead County Bd. of Election Comm'rs*, 300 Ark. 405, 779 S.W.2d 169 (1989). Once the election takes place, the issue of a candidate's eligibility under § 7-5-207(b) becomes moot. *Id.*

Now that we are assured that Clement and Halter are procedurely properly before us, we turn to Clement's points for reversal on the merits. He first argues that the trial court used the wrong standard to determine if Halter meets the constitutional residency requirement for Lieutenant Governor. We hold the trial court was correct.

As previously discussed, "[n]o person shall be eligible for the Office of Governor or Lieutenant Governor except a citizen of the United States who . . . shall have been seven years a resident of Arkansas." In determining the qualifications of voters and public officials, the word "residence" has usually been treated as if it were synonymous with "domicile" and dependent to some extent upon the intent upon the person involved. *See Jenkins v. Bogard*, 335 Ark. 334, 980 S.W.2d 270 (1998). In other words, the determination of residence is a question of intention, to be ascertained not only by the statements of the person involved, but also from his conduct concerning the matter of residence. *Id.* (citing *Phillips v. Melton*, 222 Ark. 162, 164, 257 S.W.2d 931, 932 (1953)). Also important to the instant case is Arkansas's settled rule of law that a person removing from his old home does not acquire a new domicile until he abandons his old one. *See Ptak v. Jameson*, 215 Ark. 292, 220 S.W.2d 592 (1949). Thus, for the purpose of a voter or a public official, a person does not have two domiciles with a right to choose between them; his domicile is either at one place or the other. *Id.* This court has held that intention is a question of fact, and in election contests, the findings of the trial judge on factual

---

[4] Section 7-5-207(b) provides as follows:

No person's name shall be printed upon the ballot as a candidate for any public office in this state at any election unless the person is qualified and eligible at the time of filing as a candidate for the office to hold the public office for which he is a candidate[.]

questions have the force and effect of a jury verdict. *Phillips v. Melton*, 222 Ark. at 164, 257 S.W.2d at 932.

Finally, in *Brick v. Simonetti*, 279 Ark. 446, 652 S.W.2d 23 (1983), this court said the following:

> Gleaning a state of mind is uncertain work, at best, yet *intent*, in large measure, determines where one's home is. Here, the trial court pointedly commented on the credence he attached to the assertions of Simonetti that she intended to make her permanent home in the district, and the finding must weigh heavily on review. Where those assertions are supported by manifestations consistent with such an avowed intent, we are not inclined to declare that clear error occurred. See ARCP Rule 52(a).

*Brick*, 279 Ark. at 449 (emphasis in original).

In the present case, the trial judge was very thorough in listing the evidence that shows Halter had not only established his original (old) domicile in North Little Rock, Arkansas, but also had gone to great lengths to retain his domicile in this state. Those pertinent findings are as follows:

• Bill Halter was born in Arkansas on November 30, 1960;

• after his eighteenth birthday, Halter registered to vote in Arkansas, listing his residence as his parents' house, at 5404 Randolph Road, North Little Rock;

• Halter voted in the 1980 general election and has voted consistently and exclusively in Arkansas from then until the present;

• Halter remained in Arkansas until he matriculated at Stanford University in September 1979;

• Halter attended Stanford University from September 1979 until May 1983;

• Halter performed summer internships while enrolled at Stanford, including working at a Little Rock engineering firm in the summer of 1980 and an internship in the summer of 1983, after graduation from Stanford, for then–Governor Bill Clinton in Little Rock;

• while a student at Stanford, Halter, as a resident of Arkansas, applied for and received the Truman Scholarship;

• while a student at Stanford, Halter, as a resident of Arkansas, applied for and received the Rhodes Scholarship;

- Halter was enrolled in graduate studies at Oxford University from 1983 to 1986;[5]

- in the summer of 1984, Halter served as an intern for then-Governor Bill Clinton in Little Rock;

- after graduating from Oxford in 1986, and until 1991, Halter worked in the private sector and on Capitol Hill for the United States government, and lived in Washington, D.C.;

- Halter lived in Arkansas from October 1991 to January 1993, and worked on the presidential campaign of President Bill Clinton;

- Halter served eight years in the Clinton Administration from 1993 to 2001;[6]

- when President Clinton nominated Halter to be the Deputy Commissioner of the Social Security Administration, at Halter's choice, his nomination papers reflected that he was a resident of North Little Rock;

- Halter has maintained his Arkansas voter registration up until the present, and he has voted in Arkansas elections throughout his education and career;

- Halter holds an Arkansas driver's license, has continually held an Arkansas driver's license since he was of the legal age to do so, and has never had a driver's license from another state;

- Halter purchased, licensed, assessed, and paid taxes on automobiles in Arkansas and has Arkansas car tags on his vehicle;

- Halter never changed his permanent mailing address from his parents' home in North Little Rock until after he moved back to Arkansas in August of 2005;

- Halter paid income taxes in Arkansas;

---

[5] Regarding Halter's sojourns outside of the state during his educational career, we allude to language in *Ptak v. Jameson, supra,* that provides that a "student who comes to [a different location] for the sole purpose of securing an education does so without making a change of residence." *Ptak,* 215 Ark. at 298, 220 S.W.2d at 595.

[6] As for Halter's years spent in Washington D.C. in service to the Clinton Administration, the trial court correctly relied on Ark. Const. art. 19, § 7, which provides that "[a]bsence on business ... of the United States ... shall not cause a forfeiture of residence once obtained."

- Halter never intended to abandon Arkansas as his permanent residence;

- Halter never intended to permanently become a resident of Washington, D.C.;

- Halter never intended to permanently become a resident of California;

- Halter purchased property in Garland County, Arkansas, in 2004;

- Halter moved back to Arkansas in August 2004 to 5404 Randolph Road, North Little Rock;  and

- Halter and his wife now live at 2912 Timber Creek Court in North Little Rock.

Following these factual findings, the trial court determined that Clements had not proven that Halter ever changed residency from Arkansas to another state. The court concluded as follows:

> [T]he many actions taken by . . . Halter to retain his connection to Arkansas, including voting in Arkansas, maintaining an Arkansas driver's license, and filing Arkansas income taxes, do not demonstrate an intent to abandon his residency in Arkansas, nor an intent to establish residency in any other state. At various times, . . . Halter was physically removed from Arkansas, but the evidence and testimony reveal that his intent was never to leave Arkansas permanently, nor adopt any other state as his permanent home.

On appeal, Clement does not challenge the trial court's factual findings; rather, he contends that the trial court misinterpreted the law concerning residency and domicile. We cannot agree with Clement's arguments. As discussed above, in election cases, to effect a change of domicile from one locality or state to another, there must be an *actual abandonment* of the first domicile, *coupled with an intention not to return* to it, *and* there must be a *new domicile* acquired by *actual residence* in another place or jurisdiction, with the *intent of making the last acquired residence a permanent home.* *Jenkins v. Bogard*, 335 Ark. at 341, 980 S.W.2d at 274 (emphasis added). The foregoing evidence clearly reflects that Halter's early domicile was established in North Little Rock, and his continued conduct — such as his voting in Arkansas, maintaining an Arkansas driver's license, and paying Arkansas taxes — evidenced an intent to call Arkansas home and to return to the state. On the basis of this evidence, the trial court correctly determined that Clement failed

to prove that Halter abandoned Arkansas as his domicile with the intent never to return to it, and that Halter acquired a new domicile with the intent to make that residence his permanent home.

█ In reaching this decision, we need not address Clement's additional argument that the trial court erred in concluding that Halter was not required to have an actual place of abode in Arkansas for the seven years "immediately preceding" the election. As we uphold the trial court's finding that Halter *never abandoned* his domicile in Arkansas, we must necessarily conclude that Halter clearly met the seven-year requirement in Ark. Const. art. 6, § 5, as amended, irrespective of whether those seven years must be spent in Arkansas in the years immediately preceding the election or in any given seven years.

Affirmed.[7] The mandate in this case shall issue immediately.

HANNAH, C.J., and BROWN, J., concur.

CORBIN and IMBER, JJ., not participating.

R OBERT L. BROWN, Justice, concurring. I agree with the majority opinion on the merits but write because I question the lateness of Mr. Clement's petition.

Mr. Halter filed for lieutenant governor on March 21, 2006. Forty-five days later, Mr. Clement filed his petition for writ of mandamus on May 5, 2006, and it was heard by the circuit court

---

[7] We note that the concurring opinion references *Ball v. Phillips County Election Commission*, 364 Ark. 574, 222 S.W.3d 205 (2006), and voices concern that this court should examine the desirability of granting expedited review when a challenge is brought so close to the election date. Such a purported rule would necessarily require a change in the statutes that establish a time limit for bringing these election cases. This court has, by case law, provided a means for these "special actions" — by way of mandamus and declaratory judgment — to expedite and resolve candidate-qualification issues prior to the election. That is, the procedures that are currently in place make it possible to resolve election issues prior to the election, so long as the time is sufficient for election officials and the courts to make any corrections on the ballot, if required.

In the *Ball* case, Ball failed to pursue her petition for mandamus and declaratory judgment expeditiously in order to obtain the remedy of removing the allegedly unqualified candidate's name from the ballot either before the election occurred or before the election results were certified. The system, as established under our rules and case law, does allow time to decide qualification cases; the *Ball* appeal was dismissed because the election commission in that case had already certified the election results by the time the appeal reached this court.

on May 9, 2006. On May 10, 2006, the circuit court entered its order. This court expedited the appeal on May 12, 2006, at the request of both parties, and asked for simultaneous briefs, which were filed on May 15, 2006. The election will be held six days from this writing.

Absentee voting under Ark. Code Ann. §§ 7-5-401 through 7-5-417 (Repl. 2000 & Supp. 2005) is well underway. Early voting under Ark. Code Ann. § 7-5-418 (Supp. 2005), began on May 8, 2006. To abruptly halt the process or prevent the counting of ballots already cast for Mr. Halter at this late date would necessarily disenfranchise many voters. All of this is to say that Mr. Clement's petition should have been filed earlier.

This court said recently in a case where the eligibility petition was filed eight days before the election:

> Simply stated, Ball's petition was untimely. The candidates' names were certified on or before August 6, 2004. Ball offers no compelling reason for waiting thirty-eight days to file her petition for writ of mandamus and declaratory judgment to remove Jones' name from the ballot. If Ball had filed her suit within this thirty-eight day period (or, including the eight days following the [sic] September 13, 2004, the forty-six day period), there would have been ample time in which to resolve all relevant issues raised by Ball prior to the September 21, 2004 election.

*Ball v. Phillips County Election Comm'n*, 364 Ark. 574, 577-78, 222 S.W.3d 205, 207 (2006).

In the future, this court should examine the desirability of granting expedited review at such a late date, when no compelling reason has been given for the delay. As we have said in other election cases, albeit not eligibility cases, "to grant review at this late hour would not only be unfair to the adverse parties, but it would not give this court a sufficient amount of time necessary for meaningful deliberation of the issues presented." *Ward v. Priest*, 350 Ark. 462, 464, 88 S.W.3d 416, 417 (2002). *See also Stilley v. Young*, 342 Ark. 378, 28 S.W.3d 858 (2000).