Lloyd DUNAWAY, Vernon Wright, Sue Wright,
and Kenneth Orrell *v.* GARLAND COUNTY FAIR and
LIVESTOCK SHOW ASSOCIATION, INC.

CA 06-724 245 S.W.3d 678

Court of Appeals of Arkansas
Opinion delivered December 20, 2006

*Sanders Law Firm, P.A.*, by: *Michael E. Sanders*, for appellants.

*Wood, Smith, Schnipper, Clay & Vines*, by: *Don M. Schnipper* and *John T. Vines*, for appellee.

SAM BIRD, Judge. This appeal concerns efforts by appellants Lloyd Dunaway, Vernon Wright, Sue Wright, and Ken-

neth Orrell to challenge the validity of actions taken by appellee Garland County Fair and Livestock Show Association, Inc., in relocating its fairgrounds. Dunaway and the Wrights are members of the association and members of its board. Orrell attempted to become a member of the association but was denied membership. The trial court dismissed some of appellants' claims on motion, refused to appoint a receiver, declined to enjoin the sale of appellee's fairground property, and ordered appellee to amend its bylaws. Appellants assert that the trial court erred in three instances, specifically the denial of their motion for a continuance, the dismissal of their claims to invalidate the board's actions, and the failure to award attorney's fees. Appellee cross-appeals from the trial court's order directing it to amend its bylaws and from the denial of its request for attorney's fees.

Appellee is a nonprofit corporation governed by "Amended and Substituted Articles of Incorporation" filed with the Arkansas Secretary of State on August 24, 1989, which replaced the original articles adopted in 1940. The articles provide that "[m]embership in this association is open to any resident of Garland County, . . . approving of the goals of the corporation and willing to contribute their time and energy to accomplish the purposes of this corporation." The association is governed by a twenty-eight-member board of directors elected by the membership by secret ballot.[1] The articles do not limit the number of members. The 1997 amendments specify that vacancies on the board shall be filled by the president's nominating a person at a regularly scheduled meeting and the board's approving the nomination at the next regularly scheduled meeting. The articles also provide that the corporation shall have all of the general powers listed in Ark. Code Ann. § 4-28-209.

Dunaway was president of the board when the "Constitution and Bylaws of the Garland County Fair And Livestock Show Association" (the "bylaws") were adopted by the officers of the association on April 30, 1996. The bylaws establish a three-tier membership regime. The first tier, labeled "regular members," consists of "elected individuals who wish to contribute their time and energy to help accomplish thereof" and is limited to twenty-eight persons, consisting of twenty-seven regular elected members and the current president of the Garland County Extension

---

[1] One member is not elected by the membership: the current president of the Garland County Extension Homemakers.

Homemakers. The second membership tier, labeled "honorary members," consists of "individuals selected and approved by a majority of the regular membership." The third tier of membership, labeled "advisors," consists of "individuals selected and approved by a majority of the regular membership" and have no voting rights. The bylaws limit voting rights to the "regular" members.

The bylaws provide a method for filling board vacancies similar to that contained in the 1997 amendment to the articles. The bylaws state that the officers of the association *"shall not* enter into any contracts or agreements with an individual or an organization without a majority vote by the membership at a regular or special called meeting." (Emphasis in original.) The bylaws, as do the articles, provide that directors are to be elected to serve a three-year term, with one-third of the board elected each year. Both the articles and the bylaws provide that, in case of conflict between the articles and the bylaws, the articles will control.

On October 21, 2005, appellee, after being authorized by its board, entered into a contract to sell certain real property to SDI Realty Management, Inc., for the sum of $9.12 million. Thereafter, appellee, again acting through its board, entered into a contract to purchase certain other property for the sum of $1.2 million and to relocate its fairgrounds to the new location. Both transactions were scheduled for simultaneous closings on or before April 17, 2006.

On March 17, 2006, appellants filed suit for injunctive, declaratory, and other relief. The complaint, as amended, alleged that the membership and voting restrictions of the bylaws were illegal; that the board was thus illegally constituted; that the board had acted outside its authority; that the directors had breached their fiduciary duties to the association; and that none of the contracts executed had been properly authorized by the association and were thus void. Appellants sought an order (1) declaring that the restrictions on membership and voting set forth in the bylaws were invalid; (2) declaring that appellee's president James Mattingly was not qualified for membership due to his residency; (3) declaring that the board was illegally constituted; (4) declaring the real-estate contracts void ab initio; (5) removing the board; (6) appointing a receiver to take over the business affairs of appellee to conduct a membership campaign and to oversee an election of a new board; and (7) enjoining the board from taking any further

action with respect to the purchase or sale of any real property until a new board was elected and had conducted appropriate due diligence.

In response, appellee filed a motion to dismiss, alleging that the complaint failed to state facts upon which relief could be granted as to Mattingly's residence; that appellant Orrell lacked standing to raise the claims because he was not a member of the board; that appellants were not entitled to relief for a variety of factors; and that any injunctive relief would cause appellee irreparable harm. Appellee also filed an answer denying the material allegations of the complaint and asserting that res judicata barred any claims by appellant Dunaway and that, if injunctive relief were granted, appellants be required to post a bond in the amount of $10.3 million, as provided by Ark. R. Civ. P. 65(d) and 65.1.

At a March 21, 2006 in-chambers conference, the trial court, based upon the tacit agreement of all counsel, scheduled an expedited trial date of April 5, 2006. The trial court also denied appellants' request for a preliminary injunction due to appellants' inability to post the required bond. After having announced its intention at the March 21 conference, appellee filed a motion to dismiss on March 29, 2006. On April 3, 2006, appellants filed their motion for continuance, asserting the need for additional time for discovery and that the Arkansas Rules of Civil Procedure provide certain time frames to allow for responses to discovery and to motions. On April 4, 2006, the trial court denied appellants' motion for continuance, citing its untimeliness and the previous agreement of counsel to be ready for trial on April 5, 2006.

At the combined motions hearing and bench trial, appellee argued that appellants' complaint failed to state facts upon which relief could be granted regarding the James Mattingly's residence and the membership and composition of the board. Appellants stated that they could not produce any evidence to controvert those issues. Appellee also asserted that all actions were taken with proper board approval. Appellants, again, stated that they could not dispute that fact. The trial court asked if there were any members of the association who were not also members of the board. Appellee's counsel stated that there were not, and appellants did not dispute that assertion.

Appellee's counsel admitted that there were two vacancies on the board but stated that they had been hard to fill since the dispute over relocation arose. Counsel also asserted that the board had been acting with a proper quorum of at least fifteen members.

Appellants argued that there was a conflict between state law, the articles, and the bylaws regarding the classes of membership in the association. They also argued that the articles did not limit membership to twenty-seven members, as they contended the bylaws did.

The trial court ruled from the bench and dismissed all but two of appellants' claims, finding that James Mattingly was a resident of Garland County; that the bylaws did not set any time limit during which the association must fill vacancies on the board; that there was no conflict between the bylaws, the articles, and the law regarding the nomination and election of directors; and that the board of directors was properly constituted. The case proceeded to trial on the issues of whether appellee should revise the process for membership in the association and whether appellee had violated any statutory provisions, specifically Ark. Code Ann. § 4-28-412(2) (Repl. 2001).

At trial, Lloyd Dunaway testified that he had been involved with the association for thirty years, including serving as president for twelve or thirteen years. After identifying the articles, bylaws, and the real-estate contracts at issue, he said that there was no method for a person to become a member of the association without also being on the board. He opined that, based on the articles, the association could not sell its real estate without a vote of the membership. According to Dunaway, no appraisals were conducted prior to execution of the contracts. He said that the board had not investigated the cost of relocating the fairgrounds. Dunaway admitted that he was involved in the relocation process, having chaired the relocation committee. He said that his committee investigated and discussed three possible sites but never discussed having an appraisal or a feasibility study conducted. He said that, although there were no formal estimates for contracting work or architectural plans commissioned, such plans and estimates were available. The architectural plans were made by Jeremy Stone, a registered engineer and a member of the board. According to Dunaway, these estimates showed that the cost of the excavation work would be $257,000 and the total cost of the new fairgrounds would be $8,381,301. Although Dunaway voted with the majority to sell the current fairgrounds in October 2005, he testified that he later changed his mind. He stated that his objection was not to the sale of the fairgrounds property but to whether the proceeds from that sale would be sufficient to build new fairgrounds.

After trial, the court found that appellee did not violate any statutory provisions. The court, however, ruled that appellee must clarify its process for membership in its association. Judgment was entered accordingly, and this appeal and cross-appeal timely followed.

Appellants raise three points for reversal, each with several subpoints. The main points are that the trial court erred in not granting their motion for a continuance of the trial date, that the trial court erred in dismissing their claims, and that the trial court should have awarded appellants their attorney's fees. Appellee asserts two points on cross-appeal: that the trial court erred in ordering it to amend and clarify its membership process and that the trial court erred in not awarding its attorney's fees.

Appellants first contend that the trial court erred in denying their motion for a continuance. In order for this court to reverse the trial court's denial of a continuance, appellants must show that the trial court abused its discretion. *Bennett v. Lonoke Bancshares, Inc.*, 356 Ark. 371, 155 S.W.3d 15 (2004).

In a "Notice of Hearing on Motions and Non-Jury Trial," dated March 21, 2006, the parties were notified that motions would be heard and a non-jury trial would be held on April 5, 2006. The notice also stated that "[a]ny Motions for Continuance should be filed within 7 days after receipt of this Notice." Appellants filed their motion on April 3, 2006. The trial court denied the motion, citing the parties' agreement as to the trial date and the tardiness of the motion for the continuance. The trial court also noted that, at the pretrial conference, the only discovery appellants indicated needing were some depositions.

■ Appellants renewed the motion for continuance immediately prior to trial, stating that they were not provided with all of the documents they requested. The trial court again denied the motion, stating:

> I gave the parties information that if there was any problem with discovery I should be informed immediately and I'd take care of it. I wasn't informed of any problems until late Monday. . . . I'm going to deny the Continuance Motion and we will go forward with the trial on the merits.

Appellants argue that the trial court set an unreasonable trial schedule and that they were entitled to conduct discovery and to time to

respond to appellee's motion to dismiss. Lack of diligence is a factor to consider in denying a continuance. *Morris v. Cullipher*, 306 Ark. 646, 816 S.W.2d 878 (1991). Here, appellants did not comply with the court's directive to file their motion for continuance in a timely fashion. Also, when the continuance is based on a request for additional discovery, the appellant must not only show that there has been an abuse of discretion but also that the additional discovery would have changed the outcome of the trial. *Id.* Appellants do not explain how the result would have been different had the trial court continued the case; rather, they assert that they should have been allowed to conduct "appropriate discovery." Therefore, appellants have not shown any prejudice, and we will not reverse without a showing of prejudice.

For their second point, appellants argue that the trial court erred in dismissing their claims. This case was decided partially on summary judgment and partially by bench trial. In *Crooked Creek, III, Inc. v. City of Greenwood*, 352 Ark. 465, 101 S.W.3d 829 (2003), the supreme court set forth the standard of review for such cases as follows:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact. In bench trials, the standard of review on appeal is not whether there is any substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence.

352 Ark. at 469-70, 101 S.W.3d at 832 (citations omitted).

Under this point, appellants first argue that the trial court erred in finding that Mattingly was a resident of Garland County and was thus ineligible for membership in the association. Citing *Clement v. Daniels*, 366 Ark. 352, 235 S.W.3d 521 (2006), they note that questions of intent are particularly inappropriate for summary judgment. However, in the present case appellee presented documentary evidence in the form of Mattingly's affidavit,

tax records, voter-registration card, driver's license, and utility bills to show Mattingly's residence was in Garland County. Appellants conceded that they could not present any evidence to controvert that fact. Instead, they assert that, given more time for discovery, they could cross-examine Mattingly or produce school records showing that Mattingly's children attend school in Hot Spring County. If a party responding to a summary-judgment motion cannot meet proof with proof on an essential element of his claim, the movant is entitled to judgment as a matter of law. *See Caplener v. Bluebonnet Milling Co.*, 322 Ark. 751, 911 S.W.2d 586 (1995).

In several subpoints, appellants argue that the membership of the association and of the board are illegally constituted and that the real-estate transactions are void because they were not approved by the full association membership.

Arkansas Code Annotated section 4-28-210(a) (Repl. 2001) provides that a nonprofit corporation may have one or more classes of members, or may have no members, as provided in the articles. Here, the bylaws provide for three classes of members and limit "regular" membership to twenty-seven. The articles are silent on classes of membership, stating only that membership is open to all Garland County residents who support the association's goals. This creates an apparent conflict between the articles and the bylaws regarding the number of members. If there is a conflict between the charter and the statutes under which the charter issued, the charter must yield to the laws of the state. *Allen v. Malvern Country Club*, 295 Ark. 65, 746 S.W.2d 546 (1988). Arkansas Code Annotated section 4-28-212(a) (Repl. 2001) provides, in part, that "each member shall be entitled to one (1) vote in the election of the board of directors." Section 4-28-212(b) allows the articles to specify the voting rights of members on other issues. This implies that a class or classes of members may not have voting rights on certain issues.

Appellants rely on the supreme court's decision in *Giss v. Apple*, 239 Ark. 1124, 396 S.W.2d 813 (1965), in arguing that the entire membership of the association should be allowed to vote on the transactions. In *Giss*, a nonprofit corporation (a country club) sought to sell substantially all of its assets and move the country club to a new location. The articles of incorporation and bylaws were silent as to the vote requirement for the proposal. A close vote of the membership was taken at which a majority of the

number of members present at the meeting voted to approve the sale but not a majority of the number of members having voting rights. The supreme court, after noting that the relevant act, the Arkansas Nonprofit Corporation Act of 1963, was silent on the question, cited some general treatises on the law of corporations and placed emphasis on analogous actions of the corporation in giving the directors similar power, such as to mortgage the property of the association (which, under the articles of incorporation, required a vote of a majority of members having voting power). The court held that, in order to sell substantially all of the corporate property, a majority vote of the corporation's members having voting rights was necessary. The court thus filled the statutory void as to the sale of all assets as best it could, looking to general corporate law and the past actions of the corporation. If therefore, the sale of the fairground property is a sale of all assets without a dissolution, it appears that the vote requirement, according to *Giss*, in the absence of any controlling provision in the corporate articles or bylaws, is a majority of the members having voting power. That being said, it appears that membership in the association is consonant with membership on the board. Further, although there were two vacancies on the board, there was no evidence presented as to the vote approving both transactions.[2] Therefore, we cannot say that the transactions were not approved by a majority of the membership having voting rights.

 Appellants also assert that the trial court should have removed all of the board members for breaching their fiduciary duty to the corporation. This comes under appellants' allegation that the board violated Ark. Code Ann. § 4-28-412(2), which prohibits a charitable organization from "[engaging] in any financial transaction that knowingly jeopardizes or interferes with the ability of the charitable organization to accomplish its charitable purpose." Among the ways the board is alleged to have breached its duty is by failing to have proper studies done as to the feasibility of relocating and in not obtaining estimates as to the cost of construction. However, Lloyd Dunaway testified that his committee considered several possible sites for relocating the association.

---

[2] In their complaint, appellants allege that the vote to approve the purchase and relocation of the fairgrounds passed by a vote of thirteen to twelve. However, there was no evidence, documentary or testimonial, to support this assertion.

He also identified documents showing that cost estimates were obtained and plans developed. Despite the informality of the process, there was no showing that these estimates were not reasonable or accurate. Therefore, we cannot say that the trial court was clearly erroneous in finding that the board did not violate section 4-28-412(2) or in not removing the board.

■ Appellants also argue that the trial court erred in not appointing a receiver to manage the association's affairs. Rule 66 of the Arkansas Rules of Civil Procedure provides that "[c]ourts of equity may appoint receivers for any lawful purpose when such appointment shall be deemed necessary and proper," and under our standard of review, we must determine whether the appointment of a receiver was an abuse of discretion. The appointment of receivers rests within the discretion of courts of equity, to be exercised with restraint and caution, and ordinarily in conjunction with a pending proceeding, and rarely as a means in itself, but whenever unusual circumstances warrant. *Union Planters Nat'l Bank v. E. Cent. Ark. Econ. Dev. Corp.*, 340 Ark. 706, 13 S.W.3d 578 (2000). The power to appoint a receiver is, of course, a harsh and dangerous one and should be exercised with great circumspection. *Chapin v. Stuckey*, 286 Ark. 359, 692 S.W.2d 609 (1985) (citing *Kory v. Less*, 180 Ark. 342, 22 S.W.2d 25 (1929)). The cases in which receivers ordinarily will be appointed are confined to those in which it can be established to the satisfaction of a court that the appointment of a receiver is necessary to save the property from injury or threatened loss or destruction. *Union Planters Nat'l Bank*, *supra*. Here, there has been no such showing. Instead, there is evidence that the board, through Dunaway's committee, considered the matter before acting.

As their last argument under this point, appellants also argue that the trial court should have enjoined the real-estate transactions until a new board could be elected. The granting or denying of an injunction is a matter falling within the sound discretion of the trial court and its decision will not be reversed on appeal unless it is clearly erroneous. *Southeast Ark. Landfill, Inc. v. State*, 313 Ark. 669, 858 S.W.2d 665 (1993). Because we affirm the trial court on the previous subpoints, there is no basis for the issuance of an injunction.

We discuss appellants' third point and appellee's second point on cross-appeal together. In those points, appellants and appellee each argue that the trial court erred in not awarding them

their attorney's fees. However, it does not appear that either party presented their request to the trial court or obtained a ruling. An issue cannot be raised for the first time on appeal. *Cole v. Laws*, 349 Ark. 177, 76 S.W.3d 878 (2002). We therefore refuse to address these arguments.

On cross-appeal, appellee argues that the trial court erred in ordering it to revise its bylaws to set forth the process for membership. For the reasons stated above in appellants' second point, there is a conflict between the articles and the bylaws regarding classes of membership. Further, appellee cites no authority in support of its argument. Therefore, it is appropriate for the court to require revision to address that conflict, especially where appellants sought declaratory relief.

Affirmed on direct appeal; affirmed on cross-appeal.

HART and GRIFFEN, JJ., agree.